# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-4091

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

AMIN W. WILLIAMS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03 CR 65—**John C. Shabaz**, *Judge.*

_____

ARGUED FEBRUARY 15, 2005—DECIDED JUNE 9, 2005

_____

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Amin Williams pleaded guilty to
unlawfully possessing a firearm following a felony con-
viction, *see* 18 U.S.C. § 922(g)(1), and the district court
sentenced him to a prison term of 115 months. Amin now
challenges the constitutionality of the felon-in-possession
statute as applied to his possession of a firearm, which he
characterizes as "purely intrastate possession." He also
mounts a Sixth Amendment challenge to his sentence based
on the fact that the district judge made certain findings as
to the nature and extent of his criminal history as well as
the circumstances of his offense that increased the sentenc-

ing range called for by the U.S. Sentencing Guidelines. We affirm Williams' conviction, finding no merit to his constitutional challenge to the felon-in-possession statute. As for Williams' sentence, although we find no plain error in any of the court's sentencing findings, we shall direct a limited remand to the district court so that the court may determine whether it would be inclined to sentence Williams differently knowing that the Sentencing Guidelines are advisory rather than mandatory. *See United States v. Paladino*, 401 F.3d 471, 483 (7th Cir. 2005).

## I.

On September 25, 2002, police in the city of Madison, Wisconsin were notified that a fight had occurred during which someone had brandished a gun. Police officers were directed to an apartment to which one of the suspected combatants had fled. They conducted a search of the premises with the lessee's consent and discovered a loaded, Smith and Wesson .44 magnum revolver with a scope, concealed beneath the drawer of the kitchen's oven. The gun had been reported stolen to the Madison police four days earlier. Williams was present in the apartment at that time of the search but identified himself to the officers using an alias and a false date of birth. After the police spoke with witnesses to the altercation and ascertained Williams' true identity, he was taken into custody and charged under state law with resisting or obstructing an officer based on his attempt to disguise his identity. The investigation into the altercation proved to be inconclusive. However, a subsequent examination of the gun by the Wisconsin State Crime Laboratory revealed prints matching Williams' right and left index fingers, left middle finger, and left thumb.

On May 19, 2003, Special Agent Jason Salerno of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives interviewed Williams. Williams told Salerno that he had

been staying at his aunt's apartment, which is where the revolver was found, since January 2001. Williams admitted that he had handled and had access to the revolver, which he believed his friends had stolen. He also admitted that he had previously been convicted of felony offenses in both Illinois and Wisconsin.

On June 4, 2003, a federal grand jury returned a one-count indictment charging Williams with unlawfully possessing a firearm after having previously been convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1). The indictment alleged that the firearm "ha[d] previously traveled in and affected interstate commerce." R. 2. That allegation was based on the fact that the revolver had been manufactured in Massachusetts.

Pursuant to a written plea agreement, R. 27, Williams offered a plea of guilty to the indictment on September 18, 2003. In the course of the hearing on that plea, the Assistant United States Attorney ("AUSA") made a brief oral proffer of the evidence that the government would have presented to establish Williams' guilt at trial. *See* Fed. R. Crim. P. 11(b)(3). Among other things, she noted that "Mr. Williams told Agent Salerno his friends had stolen the revolver and shown it to him. Williams admitted handling the revolver and having access to it." R. 41 at 18. At the conclusion of the proffer, the district judge asked Williams whether he agreed with the facts that the AUSA had outlined, and Williams responded that he did. *Id.* Finding that there was an adequate factual basis for Williams' guilty plea, the district court accepted the plea and adjudged him guilty. *Id.* at 22.

A probation officer conducted a pre-sentence investigation and prepared a report ("PSR") recommending that Williams' base offense level under the Sentencing Guidelines be set at 24, based on the nature of his offense and two prior con-

victions for offenses that constituted crimes of violence. *See* U.S.S.G. § 2K2.1(a)(2) (Nov. 2001).[1] The PSR also proposed a two-level enhancement to that base offense level because the Smith and Wesson revolver had been stolen. *See* U.S.S.G. § 2K2.1(b)(4). Three levels were to be deducted for Williams' acceptance of responsibility, *id.* § 3E1.1, resulting in an adjusted offense level of 23. The probation officer assigned Williams a criminal history of Category VI, based on five prior adult convictions and two juvenile adjudications of delinquency—all sustained before his 21st birthday—and in view of the fact that Williams had committed the instant offense while on probation and less than two years following his release from prison on a prior sentence. *See id.* § 4A1.1. For an offense level of 23 and criminal history category of VI, the Sentencing Guidelines specified a sentencing range of 92 to 115 months.

Williams made no objections to the PSR, *see* R. 38 at 2-3, and at sentencing the district court adopted the probation officer's recommended findings as to the fact that the gun that Williams possessed had been stolen and as to the nature and extent of Williams' criminal history, *id.* at 4-5. After listening to the parties' respective positions as to sentencing, the court ordered Williams to serve a sentence of 115 months, the maximum sentence called for by the Guidelines. *Id.* at 9. "The Court is even in this day and age shocked at the violence, drugs and criminal activity that this defendant was involved with ever since his age of 13 and believes that this criminal record and his continued violation of the law does require a sentence at the top of the guideline range." *Id.* at 8.

---

[1] The district court sentenced Williams using the November 2001 version of the Guidelines. *See* R. 38 at 4.

## I.

### A. Commerce Clause Challenge to Section 922(g)(1)

Williams first challenges the constitutionality of the felon-in-possession statute as it applies to his possession of the Smith and Wesson revolver. Williams posits that because he possessed the gun solely within the State of Wisconsin, and because the record reveals no substantial connection between his possession of the gun and interstate commerce, Congress had no authority under the Commerce Clause, *see* U.S. Const. Art. I, § 8, cl. 3, to reach his possession of the gun. *See United States v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624 (1995) (holding that Gun-Free School Zones Act of 1990, which proscribed possession of a firearm within 1000 feet of a school, exceeded congressional authority under Commerce Clause because it reached conduct that did not substantially affect or have a meaningful connection with interstate commerce). Williams did not make this argument below, so our review is solely for plain error. *E.g.*, *United States v. Rogers*, 89 F.3d 1326, 1338 (7th Cir. 1996).[2]

As Williams himself acknowledges, our precedents foreclose his argument; indeed, Williams indicates that he is making the argument solely to preserve it for Supreme Court review. It suffices to note that we have held repeatedly that section 922(g)(1), because it requires proof that the defendant possessed a firearm "in or affecting commerce,"

---

[2] Although Williams did not expressly reserve the right to appeal his conviction in the written plea agreement, we have previously treated an attack on the constitutionality of section 922(g)(1) as one that is jurisdictional in nature and therefore cannot be waived. *United States v. Bell*, 70 F.3d 495, 496-97 (7th Cir. 1995). In any event, the government has not argued that Williams waived any attack on his conviction by pleading guilty and has therefore waived any claim of waiver. *See*, *e.g.*, *United States v. Murphy*, 406 F.3d 857, 860 (7th Cir. 2005).

represents a valid exercise of congressional authority under the Commerce Clause. *E.g.*, *United States v. Olson*, ___ F.3d ___, 2005 WL 1163676, at *5 (7th Cir. May 16, 2005) (citing *United States v. Lemons*, 302 F.3d 769, 772 (7th Cir. 2002)). We have also held that so long as the firearm crossed state lines at any point prior to the defendant's possession of the gun, his possession is "in or affecting commerce." *E.g.*, *id.* (citing *Lemons*, 302 F.3d at 772-73); *United States v. Harris*, 394 F.3d 543, 551 (7th Cir. 2005).

## B. Findings as to Criminal History

As we noted above, Williams' criminal history affected the calculation of his sentencing range in two ways. First, the determination that two of Williams' prior convictions were for crimes of violence resulted in a higher base offense level. *See* U.S.S.G. § 2K2.1(a)(2). Second, the nature and extent of his prior criminal history placed him in the highest criminal history category. In both respects, Williams' prior convictions increased his sentencing range substantially. In pleading guilty, Williams admitted to one of his prior convictions, which was necessary to establish his status as a convicted felon who was prohibited from possessing a firearm. R. 41 at 18-19; *see* § 922(g)(1); *see also, e.g.*, *United States v. Gilbert*, 391 F.3d 882, 883 (7th Cir. 2004). He did not otherwise formally acknowledge the breadth and nature of his criminal record, however (although, as we have noted, he posed no objections to the PSR). Had Williams' criminal history been disregarded at sentencing with the exception of the one prior conviction he acknowledged, his base offense level likely would have been 20, *see* § 2K2.1(a)(4)(A), his adjusted offense level would have been 19, and with a criminal history category of II (for the two criminal history points assigned to the admitted conviction), the sentencing range specified by the Guidelines would have been 33 to 41 months.

Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), Williams contends that unless admitted by a defendant, the fact and nature of any prior convictions that expose him to a higher penalty must be determined by a jury rather than by the sentencing judge. *Apprendi* held that (with one exception we are about to discuss) any fact that increases the penalty beyond the statutory maximum otherwise prescribed for the offense must be proven to a jury beyond a reasonable doubt. No aspect of Williams' criminal history exposed him to a higher statutory minimum or maximum penalty. However, as we have discussed, the extent and nature of his history did have the effect of increasing the sentencing range under the Guidelines. And the Supreme Court's subsequent opinions in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005), extended *Apprendi*'s rationale to sentencing regimes like (and including) the U.S. Sentencing Guidelines. Williams thus contends that the sentencing judge was barred from making an independent assessment of his criminal history when its findings boosted his sentencing range. This was not an argument that Williams made below, so the error, if any, in the district court's findings as to his criminal history must be a plain one in order for us to disturb those findings. *E.g., United States v. Dumes*, 313 F.3d 372, 385 (7th Cir. 2002).[3]

However, the Supreme Court has excluded a defendant's criminal history from the range of facts that must, if not admitted, be proven to a jury before the defendant is subject to increased penalties. Two years before it decided *Apprendi*, the Court in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219 (1998), held that the existence of a prior conviction need not be alleged in the indictment or proven to a jury as an element of the offense, but rather

---

[3] In his plea agreement, Williams did reserve the right to appeal his sentence. R. 27 ¶ 10.

may be determined by the judge at sentencing, even if the prior conviction increases the statutory maximum sentence that may be imposed on the defendant. The defendant in *Almendarez-Torres* had pleaded guilty to illegally reentering the United States following deportation in violation of 8 U.S.C. § 1326(a), and pursuant to section 1326(b)(2), an individual convicted of this crime is subject to a higher maximum sentence (20 years as opposed to two) if his deportation followed a conviction for an aggravated felony. In view of the penalty increase that the statute called for, the defendant asserted that the prior felony conviction must be alleged in the indictment and otherwise treated as an element of the offense. But the majority in *Almendarez-Torres* rejected this view, concluding that Congress had not intended to treat the prior conviction as an element of the crime, 523 U.S. at 229-39, 118 S. Ct. at 1224-28, and that the Constitution did not require it to be treated as such, *id.* at 239-47, 118 S. Ct. at 1228-33. The court pointed out that it is a sentencing judge's obligation in every case to consider the defendant's criminal history. *Id.* at 230, 118 S. Ct. at 1124 (citing, *inter alia*, U.S.S.G. §§ 4A1.1, 4A1.2). The existence of a prior conviction for an aggravated felony was "as typical a sentencing factor as one might imagine," the court reasoned. *Ibid.* As such, that factor could be determined by the judge rather than a jury. *Id.* at 243-44, 118 S. Ct. at 1230-31.

Whatever commonalities a prior conviction might have with factors that the Court has since held must be proven to a jury, the Court's opinions in *Apprendi*, *Blakely*, and *Booker* have left the holding of *Almendarez-Torres* undisturbed. The Court in *Apprendi* specifically excluded the fact of a prior conviction from the rule it established for other facts that increase the statutory penalties to which a defendant is exposed. 530 U.S. at 488-90, 120 S. Ct. at 2361-62. Both *Blakely* and *Booker* echo *Apprendi* on this point. *Blakely*, 124 S. Ct. at 2536; *Booker*, 125 S. Ct. at 748,

756. Likewise, the Court's recent opinion in *Shepard v. United States*, 125 S. Ct. 1254 (2005), decided after *Booker*, acknowledges the continuing validity of *Almendarez-Torres. See id.* at 1262-63 (plurality), and *id.* at 1269-70 (dissent).

Therefore, the district court did not plainly err in making findings with respect to Williams' criminal history, be they findings as to the fact of his prior convictions or as to the nature of those convictions. However much in tension the holding of *Almendarez-Torres* may be with the holdings of *Apprendi*, *Blakely*, and *Booker*, *see Shephard*, 125 S. Ct. at 1264 (Thomas, J., concurring) ("*Almendarez-Torres* . . . has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided"), the Supreme Court has yet to overrule *Almendarez-Torres*. Until it does, the district court does not violate a defendant's Sixth Amendment right to a jury trial by making findings as to his criminal record that expose him to greater criminal penalties. *See*, *e.g.*, *United States v. Lechuga-Ponce*, ___ F.3d ___, 2005 WL 1163609, at *1 (7th Cir. May 17, 2005) ("the fact of a prior conviction need not be proven beyond a reasonable doubt"); *United States v. Carpenter*, 406 F.3d 915, 917 (7th Cir. 2005) ("a sentencing court is entitled to classify and take into account the nature of a defendant's prior convictions, provided that the judge does not engage in factfinding about what the accused *did*") (emphasis in original).

## C. Finding that the Gun Was Stolen

We come finally to Williams' contention that the district court violated his Sixth Amendment right to a jury trial when it determined that the gun he possessed was stolen and enhanced his offense level by two levels based on that finding. *See* U.S.S.G. § 2K2.1(b)(4). *Booker* holds that a defendant has a Sixth Amendment right to have a jury

determine based on proof beyond a reasonable doubt any fact that has the effect of increasing a mandatory sentencing range. 125 S. Ct. at 748-54, 755-56. The finding that the Smith and Wesson revolver was stolen did have the effect of increasing Williams' sentencing range.

The government contends that there was no *Booker* violation, because Williams had admitted that the gun was stolen. *See Booker*, 125 S. Ct. at 756 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be *admitted by the defendant* or proved to a jury beyond a reasonable doubt.") (emphasis ours). As we noted previously, the AUSA noted in her Rule 11 proffer that Williams told Special Agent Salerno that he believed his friends had stolen the gun, and Williams acknowledged the accuracy of that proffer. Williams replies that this was not sufficient to constitute an admission for purposes of the Sixth Amendment, given that the court in questioning Williams about the basis for his plea did not specifically ask him whether the gun was stolen. It is no surprise that the court omitted to question Williams on this point, as the ownership of the gun was not an element of the offense with which Williams was charged, in the sense of establishing either his guilt or the statutory range of penalties, nor was the fact that the gun was stolen alleged in indictment. We add that whether or not the gun was stolen was not a matter addressed in the written plea agreement executed by the parties. *Cf. United States v. Castillo*, 406 F.3d 806, 823 (7th Cir. 2005) (defendant in plea agreement specifically conceded conduct forming basis for application of enhancement for obstruction of justice).

We may put that point aside, however. Whether or not the district court's finding as to the gun being stolen was based on a genuine admission by Williams is not dispositive of his Sixth Amendment claim. For the Supreme Court in *Booker*

chose to solve the Sixth Amendment problem posed by the Sentencing Guidelines not by precluding judges from making factual determinations for purposes of sentencing, but by severing and excising, *inter alia*, the statutory provision rendering the Guidelines obligatory, 18 U.S.C. § 3553(b)(1). 125 S. Ct. at 764-65. Thus, while district courts are still required to consult the Guidelines, make findings as to the pertinent Guidelines factors, and take the resulting Guidelines sentencing range into consideration in deciding how to sentence a defendant, the Guidelines no longer bind sentencing judges in their selection of a reasonable sentence, but are only advisory. *Id.* at 767.[4]

This is where the error occurred in sentencing Williams. The district court sentenced Williams in November 2003, more than a year before the Supreme Court decided *Booker* and at a time when the Guidelines still were considered to be binding. Thus, after making findings as to the pertinent sentencing factors, the court sentenced Williams within the resulting Guidelines range without realizing that it had the discretion to sentence outside of that range even if, for example, the circumstances did not meet the relatively narrow criteria for a departure from the Guidelines. *See* 18 U.S.C. § 3553(b)(1); U.S.S.G. § 5K2.0. In retrospect, with the benefit of the Supreme Court's decision in *Booker*, we now know that it was error to treat the Guidelines as binding, and because Williams' case was pending on direct review when *Booker* was decided, he may claim the benefit of its remedial holding. *Booker*, 125 S. Ct. at 769;

---

[4] Aside from the asserted Sixth Amendment error, we can find no other defect in the district court's finding that the Smith and Wesson revolver was stolen. Even if Williams did not genuinely admit as much for Sixth Amendment purposes, he never contested the accuracy of the government's assertion that he told Agent Salerno the gun was stolen, nor did he object to the PSR's proposed finding that the gun was stolen.

*United States v. Schlifer*, 403 F.3d 849, 853 (7th Cir. 2005); *see also Castillo*, 406 F.3d at 823 (recognizing that *Booker* error may occur even in the absence of judicial fact-finding, where district court treats Guidelines as mandatory) (quoting *United States v. White*, 406 F.3d 827, 835 (7th Cir. 2005)).

But because Williams did not make a Sixth Amendment objection below, he must not only establish error, but plain error, in order to obtain relief. *See Booker*, 125 S. Ct. at 769. In particular, he must show that the mistake in treating the Guidelines as obligatory affected his substantial rights. Fed. R. Crim. P. 52(b); *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005). In other words, we have to know whether the district court might have sentenced Williams to a lesser prison term had it known that the Guidelines were advisory. *United States v. Paladino, supra*, 401 F.3d at 481-82. The fact that the court chose a sentence at the top of the Guidelines range does not by itself rule out this possibility, as the court made that selection believing that its discretion was confined to the range specified by the Guidelines. *Id.* at 482; *see also United States v. Della Rose*, 403 F.3d 891, 907 (7th Cir. 2005). And on review of the record, we can find no other clue suggesting that the court would have sentenced Williams to at least 115 months had it realized that it had the discretion to impose a sentence outside of the Guidelines range. *See Lee*, 399 F.3d at 866-67. As we cannot divine whether the sentencing judge might be inclined to sentence Williams more leniently under a discretionary scheme, we must remand the case to the district court so that it can make that determination. *See Paladino*, 401 F.3d at 483. If, after due consideration, the court indicates that it would be inclined to impose a lesser sentence on Williams, then prejudice will have been established, and we shall vacate the sentence to allow resentencing. *Della Rose*, 403 F.3d at 908 (citing *Paladino*, 401 F.3d at 484). On the other hand, if the court concludes that

it would be inclined to sentence Williams to the same (or a longer) term knowing that it has broader discretion after *Booker*, then the only step left for us to take will be to consider whether Williams' sentence was plainly erroneous in the sense of being unreasonable. *Id.* (citing *Paladino*, 401 F.3d at 484).

## III.

Finding no plain constitutional error in the application of 18 U.S.C. § 922(g)(1) to Williams' possession of a handgun that was manufactured in another state, we AFFIRM his conviction. We also find no plain error either in the court's findings as to the extent and nature of Williams' criminal history or in its finding that the revolver Williams possessed was stolen. However, because the court sentenced Williams believing that the Sentencing Guidelines were binding rather than mandatory, we order a limited REMAND so that the district court may determine whether it would be inclined to sentence Williams to a lesser prison term knowing that it has the discretion to do so after *Booker*. We retain appellate jurisdiction pending the outcome of this remand.

A true Copy:

   Teste:

           _____

          *Clerk of the United States Court of Appeals for the Seventh Circuit*