# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-1812

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MAURICE C. PITTMAN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01 CR 30108—**William D. Stiehl**, *Judge.*

———————

SUBMITTED JUNE 10, 2005—DECIDED AUGUST 8, 2005

———————

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* In December 2002, a federal court jury convicted Maurice C. Pittman of distributing approximately 6.3 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). The jury also returned a finding that the amount of controlled substances attributable to Pittman in the distribution charge was at least 5 grams, but less than 50 grams, of cocaine base. The district court sentenced Pittman to 390 months' imprisonment to be followed by a term of supervised release. On appeal, Pittman challenges

the district court's denial of his pretrial motion to suppress, and the court's failure to provide a limiting instruction to the jury. In supplemental briefing to this court, Pittman also contends that his sentence was unconstitutional. In a previous opinion in this appeal, we affirmed his conviction and sentence. That opinion was vacated by the Supreme Court and the case remanded to this court for reconsideration in light of *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738 (2005), which impacts our determination of the sentencing issue.

Pittman's arrest resulted from a traffic stop, the details of which form the basis of his motion to suppress. On June 20, 2001, Sergeant Gillespie of the Alton Police Department, observed Pittman enter a white Cadillac and begin driving. Gillespie was aware of Pittman's prior criminal history for robbery, weapons possession, and cocaine trafficking, and Gillespie had recently received information that Pittman was distributing cocaine and crack cocaine in parking lots in Alton. Gillespie placed Pittman's vehicle under surveillance, and noticed that the vehicle did not have a license plate and contained no visible evidence of registration. He then contacted the police dispatcher and requested that a uniformed Alton police officer in a marked patrol car conduct a traffic stop for failure to properly display a registration tag. While waiting for the officer to arrive, Gillespie observed Pittman stop in a liquor store parking lot. Pittman remained in his car with it running, and Amanda Schoeneweis emerged from a car parked nearby and entered Pittman's vehicle. At that time, a marked Alton patrol car arrived driven by Sergeant Jonniece Young, who approached Pittman's car from the rear. Young testified that she recognized both Pittman and Schoeneweis, and was aware that both had lengthy criminal records. Young further testified that she did not see either a license plate or a temporary tag on the windshield on Pittman's vehicle. As she approached the vehicle, she ob-

served Schoeneweis lean forward positioning herself below the dashboard, then returning upright to sit back down. From that behavior, Young suspected that Schoeneweis was attempting to conceal something. When Pittman was unable to produce his license and proof of insurance, Young placed him under arrest. In the subsequent search, she found $200 cash on Pittman, as well as a dollar bill folded in a manner indicative of use to transport narcotics, which later tested positive as containing cocaine residue. She also noted that a valid temporary registration plate was located inside the front windshield on the driver's side.

Schoeneweis was also arrested. She later admitted to secreting crack cocaine in her body when the officer arrived, and subsequently removed 6.3 grams of cocaine base from her body.

Pittman contends that there was no basis for Young to execute the traffic stop, and therefore that all evidence that resulted from that stop should have been suppressed. As support for that, he points to Young's incident report, in which Young stated:

> Officer was advised by dispatch that Special Agent Richard Gillespie was currently following a vehicle, a 1994 Cadillac El Dorado, bearing applied-for Illinois registration.

Pittman contends that the incident report reveals that Gillespie must have known that the vehicle bore applied-for Illinois registration, and therefore that Young had no basis for the stop. On re-direct, Young acknowledged that another part of her incident report was inaccurate, in which Young stated that Gillespie told her that Pittman was en route to Schmidt Liquor Store. Young in fact spoke only to the dispatcher and did not have direct contact with Gillespie. Young also acknowledged that the statement in the incident report concerning the applied-for plates could be incorrect as well. Gillespie and Young both testified that

they did not see the temporary registration prior to the time Young approached Pittman's car. The district court found that because of the placement of only one temporary tag in the lower front window, neither Gillespie nor Young was able to see any evidence of registration, and therefore they both had probable cause to believe that Pittman was committing a traffic violation.

Pittman's motion to suppress rests entirely on its challenge to that fact-finding by the district court. We review the district court's determination of probable cause *de novo*, but review findings of fact and credibility determinations for clear error. *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000); *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000). The testimony at trial at best establishes a contradiction in Young's testimony as to when she learned that the vehicle bore applied-for tags. Young herself acknowledged that another statement in her incident report could not have been accurate, and that her statement as to what the dispatcher conveyed regarding the tags may have also been incorrect. Pittman repeatedly argues that the district court was required to credit the statement in the incident report, because "the only place the dispatcher could obtain the information in Young's incident report that Pittman's car bore an 'applied-for Illinois registration' was from Gillespie." That misses the point. The question is whether Young, in writing the incident report, accurately conveyed what the dispatcher said, or whether she inadvertently attributed to the dispatcher information (the existence of the applied-for license) that she actually learned at a later time. Her testimony established that she was unaware of the registration tags until she approached the vehicle, and she acknowledged at trial that her incident report could be incorrect. The determination as to what actually transpired is a matter within the district court's purview, and there is no reason on this record to question the court's finding on the matter. The record provides ample

support for the finding that neither Gillespie nor Young were aware of the registration tags in the front of the vehicle at the time of the stop. Therefore, the stop was lawful, and the court properly denied the motion to suppress.

Pittman next argues that the district court erred in failing to provide a limiting instruction after admitting, under Fed. R. Crim. P. 404(b), evidence of Pittman's prior drug dealings. Rule 404(b) provides that evidence of other crimes or acts is not admissible to prove the character of the person in order to demonstrate action in conformity therewith, but it may be admissible for other purposes including, *inter alia*, proof of motive, opportunity, or intent. In this case, the government introduced evidence of past drug dealing by Pittman through testimony by Schoeneweis and by Drug Enforcement Agency (DEA) Agent Harold Watson. Schoeneweis testified without objection to her prior drug dealings with Pittman. She was also asked by the government for the identity of other persons to whom Pittman sold drugs. Over defendant's objection, she provided two names and acknowledged that there could be others. DEA Agent Watson testified regarding Pittman's confession. Asked if Pittman provided any information about his drug dealing history, Watson named several suppliers going back to 1992.

In response to the testimony by Schoeneweis and Watson, Pittman offered an instruction to limit the jury's use of the Rule 404(b) evidence. The district court refused the instruction, holding that the other acts evidence was intricately related to the charge in the indictment, and that the statements by Pittman were an admission against interest.

In this appeal, Pittman first clarified that he is not challenging the *admission* of the evidence of drug dealing with individuals other than Schoeneweis. He is only arguing that a limiting instruction should have been given. Moreover, he does not challenge the testimony from Schoeneweis of her

prior drug dealings with Pittman. Pittman concedes on appeal that her drug dealings with Pittman were intricately related to the charge in the indictment, and therefore are not considered Rule 404(b) evidence. Therefore, his challenge is limited to the contention that the district court erred in failing to give a limiting instruction regarding evidence of drug deals that did not involve Schoeneweis.

We need not consider whether a limiting instruction was required, because even if the failure to provide the instruction was error, it was harmless. The submission of an incorrect jury instruction is harmless error if a properly instructed jury would have returned the same verdict. *United States v. Folks*, 236 F.3d 384, 390 (7th Cir. 2001). That standard is met here. The evidence of Pittman's guilt was overwhelming. Officer Gillespie observed Pittman pull into the parking lot and wait while Schoeneweis joined him in the car. DEA Agent Watson testified as to Pittman's confession that Pittman in fact provided the crack cocaine to Schoeneweis in the car, which Schoeneweis secreted in her body, and that she paid him $130 or $140 for it. The search incident to the arrest found $200 cash on his person, as well as a dollar bill folded in a manner often used to carry crack, and with visible residue of crack cocaine on it that tested positive in a lab. Furthermore, Schoeneweis, in her testimony, confirmed the details of that drug transaction, and Officer Young observed movements by Schoeneweis consistent with someone attempting to hide drugs in her body. Schoeneweis subsequently removed 6.3 grams of cocaine base from her body after the arrest. Finally, Schoeneweis testified at length as to her history of drug deals with Pittman. In light of that evidence, the testimony that Pittman also engaged in drug dealing with other persons is insignificant. Pittman does not challenge the voluntariness of his confession. In light of the overwhelming evidence of Pittman's guilt, the failure to provide a limiting instruction as to the other acts evidence was harmless.

Pittman attempts to avoid that conclusion by arguing that the error was a structural one, not subject to the harmless error analysis. As support, he cites our decision in *United States v. Harbin*, 250 F.3d 532 (7th Cir. 2001). *Harbin* in fact requires the opposite conclusion. In *Harbin*, we recognized that some errors affect the framework in which the trial proceeds which render the criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence, and are therefore reversible error *per se. Id.* at 542-43. Such "structural" errors are few in number, including errors such as the complete denial of counsel, a biased judge, racial discrimination in the selection of the grand jury, the denial of self-representation, the denial of a public trial, and a defective reasonable doubt instruction. *Id.* at 543. We also cautioned in *Harbin*, however, that most errors during a trial do not fall within that category. In particular, we noted that trial errors occurring during the presentation of the case to the jury are generally amenable to harmless error analysis because they may be quantitatively assessed in the context of the evidence as a whole. *Id.* at 544. The alleged error in denying a limiting instruction is precisely such a "trial error." Even assuming that the jury, in the absence of a limiting instruction, used the other acts evidence for an impermissible purpose, we can assess whether the jury beyond a reasonable doubt would have returned the same verdict in light of the other evidence properly before it. Because the impact of that error on the trial is capable of assessment at this stage, and the error did not affect the framework in which trial proceeded or the fundamental integrity of the trial process, it does not require automatic reversal. We have already concluded that the provision of the allegedly improper instruction was harmless error.

Finally, Pittman alleges that his sentence was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 524 U.S. 296 (2004), as inter-

preted by *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004). Our decision in *Booker* has since been affirmed by *United States v. Booker*, 125 S. Ct. 738 (2005). Those cases hold that a defendant has the right to have a jury decide factual issues that will increase the defendant's sentence. *Booker*, 125 S. Ct. at 756; *United States v. Shearer*, 379 F.3d 453, 457 (7th Cir. 2004). Specifically, the Supreme Court in *Booker* made clear that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty of a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756.

First, Pittman argues that the district court improperly determined that he was responsible for 251 grams of cocaine base whereas the jury convicted him of possession with intent to distribute 6.3 grams and returned a special finding that he distributed at least 5 but less than 50 grams of crack cocaine. That type of determination of drug quantity as a part of relevant conduct is the type of error that has led to reversal of other sentences under *Blakely* and *Booker*. In this case, however, the court's conclusion regarding drug quantity were irrelevant to his sentence, because his sentence was based not on that relevant conduct, but rather on the court's determination that he was a career offender. His status as a career offender yielded an offense level of 37 which is higher than the offense level of 34 that his relevant conduct produced. Accordingly, his sentence was based on the career offender determination rather than the relevant conduct determination of drug quantity.

A defendant is considered a career offender under the Guidelines if:

(1) the defendant was at least 18 years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that

> is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(b). The jury conviction in this case established the second factor, but Pittman argues that the jury did not find, and he did not admit, that he was at least 18 years of age at the time of this conviction and that he had two prior felony convictions for possession of a controlled substance. Pittman acknowledges that he failed to raise this argument, or any similar argument in the district court, and therefore that his challenge should be reviewed for plain error.

We first consider Pittman's challenge to the use of the two prior felony convictions. In *Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998), the Supreme Court held that prior felony convictions were sentencing factors that need not be charged in an indictment nor proven beyond a reasonable doubt because they are not elements of the charged offense. That decision has not been overruled by *Apprendi*, *Blakely*, or *Booker*. *See United States v. Williams*, 410 F.3d 397, 402 (7th Cir. 2005) (concluding that "[w]hatever commonalities a prior conviction might have with factors that the Court has since held must be proven to a jury, the Court's opinions in *Apprendi*, *Blakely*, and *Booker* have left the holding of *Almendarez-Torres* undisturbed."); *United States v. Schlifer*, 403 F.3d 849, 852 (7th Cir. 2005). Even post-*Booker*, then, evidence of a prior conviction that would increase the statutory maximum does not need to be submitted to a jury, and therefore the district court did not err in considering the prior felony convictions. We note that even absent *Almendarez-Torres*, Pittman's argument would fail because he in fact admitted to those two prior convictions at the sentencing hearing. *See Booker*, 125 S. Ct. at 756 (judge may impose sentence based on facts admitted by the defendant as well as those found by the jury).

The remaining factor is whether Pittman was at least 18 years of age at the time of the instant offense. As we noted, *Booker* requires that any fact necessary to support a sentence must be either established by a guilty plea or a jury verdict, or admitted by the defendant or proved to a jury beyond a reasonable doubt. *Booker*, 125 S. Ct. at 756; *Schlifer*, 403 F.3d at 853. The government argues that Pittman admitted that he exceeded that age threshold because the presentence report (PSR) included his age and Pittman's attorney acknowledged that there were no factual errors in the PSR. We need not tarry with whether that is a sufficient "admission," because even if it were not, this could not survive harmless error review let alone plain error review. Pittman does not assert that he was actually less than 18 years of age at the time of the offense, only that the jury rather than the judge should have determined his age. His argument, then, is that the proper procedures were not followed, but he never argues that the result would be different. That fails to meet the plain error standard in that there is not even an allegation that the alleged error "affected substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Stotts*, 323 F.3d 520, 522 (7th Cir. 2003). In fact, it would fall short under harmless error review as well. The alleged error could not have impacted the outcome of the sentencing, and therefore Pittman is entitled to no relief on that claim.

Pittman has one remaining claim, however. In *Booker*, the Supreme Court invalidated the mandatory application of the Guidelines, holding that district courts are obligated to consider them but are not bound by them. 125 S. Ct. at 767. That decision applies to all cases pending on direct review, and accordingly it was error for the district court to treat the Guidelines as binding. Because the issue was not raised below, Pittman must establish not only error, but plain error, in order to obtain relief, which requires a showing

that the error in treating the Guidelines as mandatory affected his substantial rights. *Williams*, 410 F.3d at 403-04. The record provides no answer to whether the district court might have sentenced him to a lesser sentence had it known of the advisory nature of the Guidelines, and therefore whether the error was one affecting his substantial rights. *See United States v. Paladino*, 401 F.3d 471, 483 (7th Cir. 2005). In accordance with *Booker*, we must remand the case to the district court for that determination. If the district court indicates that it would be inclined to impose a lesser sentence, then Pittman will have demonstrated plain error, and we will vacate the sentence and remand for resentencing. *Williams*, 410 F.3d at 404; *Paladino*, 401 F.3d at 484. On the other hand, if the district court determines that it would not be inclined to impose a lower sentence given the advisory nature of the Guidelines, we will consider only whether the sentence was plainly erroneous in the sense of being unreasonable. *Williams*, 410 F.3d at 404; *Paladino*, 401 F.3d at 484.

Accordingly, we affirm Pittman's conviction and find no plain error in the court's findings as to his age and prior convictions. Because the district court sentenced Pittman believing that the Guidelines were binding rather than advisory, we order a limited remand for the district court to determine whether it would be inclined to sentence Pittman to a lesser sentence given that discretion. We retain appellate jurisdiction pending the outcome of this remand.

A true Copy:

    Teste:

                           _____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*