In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2790

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSEPH VAN SACH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 466—**Ruben Castillo**, *Judge.*

ARGUED JANUARY 20, 2006—DECIDED AUGUST 17, 2006

Before FLAUM, *Chief Judge*, and BAUER and RIPPLE, *Circuit Judges.*

BAUER, *Circuit Judge.* After a jury trial, Joseph Van Sach was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). District Judge Ruben Castillo determined that the Armed Career Criminal Act applied, 18 U.S.C. § 924(e), and therefore, Van Sach's advisory Sentencing Guideline range was 210 to 262 months. Judge Castillo sentenced Van Sach at the bottom of this advisory range, to 210 months in prison. On appeal, Van Sach contends that he was denied due process and a fair trial when the district judge ordered him to wear leg shackles at a jury trial where Van Sach represented himself. In addition, Van Sach argues that he was denied

the right to confrontation because the government declined to call a paid confidential informant as a witness, yet relied on her acts and statements to convict him. Next, Van Sach challenges the jury instructions. Van Sach also argues that 18 U.S.C. § 922(g) is unconstitutional as applied under the Commerce Clause. Finally, Van Sach challenges the application of the Armed Career Criminal Act and the reasonableness of his 210 month sentence. We affirm.

## I. Background

### A. Investigation

The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") began investigating Joseph Van Sach in 2003. The investigation focused on illegal trafficking of firearms and involved surveillance, the use of a confidential informant, and the controlled purchase of a firearm from Van Sach.

ATF Special Agent Susan Bray testified that the first meeting between the confidential informant ("CI") and Van Sach was on July 14, 2003. Immediately prior to the meeting, Agent Bray searched the CI for contraband, found none, and equipped the CI with a digital recorder. The CI then met with Van Sach for approximately an hour and 45 minutes. Agent Bray and her fellow law enforcement officers conducted continuous surveillance of this meeting.

Agent Bray testified at trial that she retrieved the digital recorder from the CI immediately after the CI met with Van Sach on July 14, 2003, and listened to it. Having heard Van Sach's voice before, Agent Bray was able to identify both Van Sach's and the CI's voices on the tape. She followed this procedure with all the recorded conversations between Van Sach and the CI.

The CI had more in-person meetings with Van Sach on July 16 and July 17, 2003. On July 21, Van Sach and the CI had more serious conversations and they planned to meet

at Van Sach's apartment that day. The telephone conversations were recorded and Agent Bray met with the CI on the south side of Chicago around 2:30 p.m. Shortly after they met, the CI placed a telephone call to Van Sach to discuss the sale of a firearm. In this call, Van Sach could be heard telling the CI he wanted "450 for it." Van Sach also described the firearm he was selling as having "ten rounds" and he explained that it was "Teflon."

The CI placed a second phone call to Van Sach at approximately 3:30 p.m. In this recorded conversation, Van Sach again informed the CI that he had numerous firearms he was in a position to sell and that he would need the CI to bring cash that night in order to complete the gun transaction. Agent Bray met with the rest of her team to plan the operation for the CI to purchase a Talon Industries, Inc., Model T200, 9 millimeter semi-automatic pistol from Van Sach that night. The CI, ATF agents, and task force officers from the High Intensity Drug Trafficking Area Unit met at Homan Square, which was near Van Sach's house, to plan the operation. The CI met Agent Bray there and another agent, Ofelia Uribe, searched the CI for any contraband. Uribe did not find any contraband on the CI. The agents then equipped the CI with a digital recorder, transmitter, and $460 in cash to purchase the firearm.

Task Force Officer Dwayne Johnson testified that, while acting in an undercover capacity, he drove the CI to the corner of Cermak and Karlov streets, near Van Sach's house. After the CI left, Officer Johnson conducted surveillance of Van Sach's house. He witnessed the CI walk to the back of Van Sach's house and then come out approximately ten minutes later. As the CI was leaving the house, Officer Johnson saw Van Sach and a woman leave and enter a Chevy Blazer that was parked in the front. Agents Bray and Uribe were also conducting surveillance from a nearby parking lot.

Once the firearm transaction was complete, the agents and the CI returned to Homan Square. Agent Bray retrieved the digital recording device and searched the CI's handbag. In the CI's handbag Agent Bray found the firearm, which was loaded. She then listened to the recording of the meeting between Van Sach and the CI and she recognized the two voices as belonging to Van Sach and the CI, respectively. The recording was played for the jury and the following conversation was heard:

> Van Sach:  I have one 9 here.
>
> CI:        Hand it to me and I'll hand you the money, here you go.

After Van Sach handed the gun to the CI he asked for the gun back in order to wipe it down because he did not "want prints on the gun." The CI did not testify at trial, but the government authenticated the tapes through Agent Bray's testimony.

## B.  District Court Proceedings

On May 13, 2004, Van Sach was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Counsel was appointed for Van Sach. On July 27, 2004, Van Sach's counsel filed a motion to have him evaluated by mental health experts to determine whether he had a diminished capacity defense. Two days later, Van Sach's counsel orally moved to expand his request to include a competency examination. The motion was initially denied without prejudice but was later granted after Van Sach's counsel filed a written motion.

At a status hearing on September 9, 2004, Van Sach said:

> I understand about the psychiatric thing. When it's all over with, I do not wish to retain this attorney. I wish to represent myself. I know I'm going to be competent

enough to stand trial, and I just want to represent myself.

Judge Castillo repeatedly warned Van Sach about the risks of self-representation but agreed to take Van Sach's motion to appear *pro se* under advisement. On October 27, 2004, Van Sach again expressed the wish to represent himself. After further admonishment from Judge Castillo, Van Sach requested copies of the case documents to see if he could represent himself. The next day Van Sach's counsel moved to withdraw, citing irreconcilable differences. Van Sach's current attorney was subsequently appointed.

Judge Castillo received several more *pro se* pleadings from Van Sach. At a hearing on February 9, 2005, Van Sach indicated that he was more than capable of trying his own case, but wished to maintain stand-by counsel. Judge Castillo told Van Sach that he had serious concerns about Van Sach proceeding *pro se* but agreed to take the matter under consideration and said he would read Van Sach's evaluation again.

On February 17, 2005, Judge Castillo again admonished and urged Van Sach not to proceed *pro se*. Ultimately, Judge Castillo allowed Van Sach to represent himself with the understanding that if Van Sach tried to obstruct the trial or was running into serious problems with the procedure, Judge Castillo would end Van Sach's right to represent himself and make appointed counsel, Gary Ravitz, proceed with the defense.

Based on court security recommendations, on the first day of trial Judge Castillo ordered Van Sach to appear in leg shackles. Van Sach objected and asked the court to remove the shackles. Judge Castillo denied his request. Because of a security request from the United States Marshal's Service regarding court security, Judge Castillo said he was reluctantly denying Van Sach's motion to remove the shackles in deference to the opinion of the Marshal's Service. After a jury was selected and sent home,

Judge Castillo stated on the record his reasons for the shackling order:

> The Court:    Okay. I will state for the record without the jury present now, is that I was shown a series of consistent disciplinary violations in in-custody situations where Mr. Van Sach, in common parlance, has been written up for assaultive [sic]-type behavior. And it is consistent and it is a pattern, and that is the reason for the shackling recommendation, which the court has followed.

Van Sach's stand-by counsel argued against the shackling order, asking the Judge to take note that during the day's proceedings Van Sach conducted himself without incident. Judge Castillo added,

> The Court:    No doubt about that, and I think that that's the way we need to continue to bring this trial to a resolution without any type of incident. But I have the right, as a judge, to rely on professional judgment given to me by the security experts, of which the Court doesn't claim to be a security expert. But there was enough objective evidence, and I don't want to have mini-trials on whether or not these tickets were correct, but there is enough of them over a consistent pattern that seemed to me to justify the recommendation and justify me going along with the recommendation.

Stand-by counsel continued to object, and expressed his concern that the jury might think that Van Sach was an extremely dangerous individual.

The Court:    Well, I think we've gone over it numerous times during jury selection and I have the jurors' words that they will not use it against Mr. Van Sach. And I will tell you there's just—I'm just looking at the disciplinary record. I won't hesitate to put this into the record. There's assault with serious injuries, refusing to obey orders that have led to incidents over and over again. Threatening bodily harm, insolence. It just goes on and on. If you are insistent in looking at it, I'll be happy to show it to you, but I don't think we need to have a mini-trial on this issue.

Van Sach was convicted of being a felon in possession of a firearm. Judge Castillo applied the Armed Career Criminal Act, 18 U.S.C. § 924(e), and determined that the advisory Sentencing Guideline range was 210 to 262 months. Van Sach was sentenced at the low end of this advisory range, to 210 months in prison. This timely appeal followed.

## II. Discussion

### A. Due Process

Van Sach contends that he was denied due process and a fair trial when the district court ordered him to appear in shackles at trial. He argues that his chance for a fair trial was further undermined because he was proceeding *pro se* and the jury therefore saw him in shackles every time he rose to examine a witness or address the jury. A defendant's claim that he was denied a fair trial because the district court ordered him to remain in shackles during the course of the trial is reviewed for abuse of discretion. *Deck v. Missouri*, 544 U.S. 622, 629 (2005).

A defendant in a criminal case has the right to appear before a jury free from shackles or other physical restraints. *Illinois v. Allen*, 397 U.S. 337, 344 (1970); *Roche v. Davis*, 291 F.3d 473, 482 (7th Cir. 2002). The Supreme Court has recognized, however, that a defendant's right to be free from restraint is not absolute. *Holbrook v. Flynn*, 475 U.S. 560, 567-68 (1986). The right to be free from shackles at trial "may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum." *Deck*, 544 U.S. at 629.

Van Sach's due process claim is not one we take lightly. Shackling a defendant is an extreme measure and we understand the prejudice that such an order can have on the jury. *Allen*, 397 U.S. at 343-44. Yet, we also understand a trial judge's responsibility to the safety of jurors, attorneys, and witnesses in his or her courtroom. In considering the Marshal Service's request, Judge Castillo reviewed Van Sach's significant disciplinary record at the Metropolitan Correctional Center in Chicago ("MCC").

From August 5, 2004 through January 14, 2005, Van Sach was cited ten times for refusing to obey an order, one time for refusing a work assignment, two times for being insolent to an MCC staff member, one time for threatening bodily harm, and one time for assault without a serious injury. Moreover, in a letter addressed to the district court and dated January 18, 2005 (almost a month before trial), the Acting Warden of the MCC informed the court that the defendant had again been found guilty of refusing to obey an order and the MCC imposed a sanction of 60 days disciplinary segregation, 180 days visiting restriction, and the termination of 27 days of good conduct time. An MCC memorandum from December 8, 2004, is perhaps the most troubling. In the memorandum, a Deputy U.S. Marshal reported that at approximately 9:00 a.m. on December 8, Van Sach was placed in an interview room at the Dirksen Federal Courthouse for a legal visit. Less than 30 seconds

after Van Sach's attorney left, Van Sach repeatedly pounded on the door. The marshal told him that he would be removed momentarily and that there was no need to bang on the door. Van Sach told the marshal that he would urinate on the floor if he were not immediately removed from the room. The marshal returned to the room within five minutes to find that the defendant had, in fact, urinated on the floor. At approximately 9:45 a.m., a different marshal came to get Van Sach for his court proceeding. While the marshal was trying to place handcuffs on Van Sach, Van Sach stepped back with his right leg into a stance as if prepared to take an active move on the marshal. After the court proceeding that day, Van Sach was returned to the interview room and he again repeatedly banged on the door. Additionally, he put tissue paper over the window slot to obstruct the marshals' view into the room. A marshal then entered the room to stop Van Sach's behavior and Van Sach told the marshal that if anyone entered the room they would get hurt. The defendant was eventually restrained and returned to the MCC.

In considering the shackling order, Judge Castillo was mindful of the issues that stand-by counsel raised, primarily that with Van Sach appearing *pro se*, Van Sach's leg shackles would be even more visible and audible to the jury than if he was proceeding with counsel. Yet, there was a heightened concern with Van Sach appearing *pro se*: he would be approaching the bench, addressing the jury, examining evidence, using the podium, and approaching witnesses. Judge Castillo believed that the shackling order was necessary in light of both the inherent mobility involved in representing oneself at trial and Van Sach's disciplinary record. We conclude that Judge Castillo carefully assessed the special circumstances involved in Van Sach's trial, as *Deck v. Missouri* requires. 544 U.S. at 629. Judge Castillo went to great lengths to safeguard against any prejudice the jury may have had as a result

of the leg shackles. During his initial instructions to the *venire* on the morning of jury selection, the judge informed the panel that defendant's leg shackles were not to be considered at all in terms of whether or not he's guilty or not guilty of the charge. Later that afternoon, Judge Castillo again instructed the *venire* that the defendant's leg shackles were irrelevant to guilt or innocence on the charge. Judge Castillo then asked the jury pool if there was anyone who felt that they would lean towards guilt or innocence based on the leg shackles, and no jurors responded yes. Both the government and Van Sach reminded jurors in their closing arguments that the shackling should play no role in deliberations.

Before shackles are used, *Deck* requires a trial judge to determine that the measure is justified by a state interest specific to the trial. *Id.* In this case, Judge Castillo poured over Van Sach's disciplinary records from the MCC and determined that shackles were a necessary precaution given the defendant's mobility in representing himself at trial. We hold that the district court did not abuse its discretion in requiring Van Sach to wear leg shackles during the trial.

## B.  Right to Confrontation

Van Sach next argues that his Sixth Amendment right to confrontation was violated when the government did not call the CI as a witness. Interpretation of the Confrontation Clause of the Sixth Amendment is a legal question that we review *de novo. United States v. Sutton*, 337 F.3d 792, 798 (7th Cir. 2003).

In a motion *in limine*, the government explained that it did not intend to call the CI as a witness but it would seek to admit the recordings through Agent Bray's testimony. At trial, the court admitted a series of recorded conversations between Van Sach and the CI. The recordings were made on July 14, July 21, and July 28, 2003. Because

of a technical glitch on two of the recordings, only the defendant's side of the conversation with the CI could be heard. On the other recordings, Agent Bray testified that she recognized the voices as belonging to the CI and Van Sach. Judge Castillo specifically instructed the jury, during trial and prior to deliberations, that it was "not to consider the statements of the cooperating individual for the truth of the matter asserted. Instead, the statements made by the confidential informant are only relevant to provide the context for what the listener says, does, or believes in response to them."

When recorded evidence is admitted in the absence of testimony by an informant who recorded the conversation, the Confrontation Clause of the Sixth Amendment is not violated if the statements are non-testimonial and are not offered for the truth of the matter asserted. It is well settled that non-hearsay statements are admissible if they are offered to provide context. *See United States v. Tolliver*, Nos. 05-2910, 05-2962, 2006 U.S. App. WL 2007642, at \*4 (7th Cir. July 19, 2006); *United States v. Gajo*, 290 F.3d 922, 930 (7th Cir. 2002); *United States v. Davis*, 890 F.2d 1373, 1380 (7th Cir. 1989).

Van Sach contends that his right to confrontation was violated based on the Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Supreme Court was clear that out-of-court testimonial statements are barred by the Confrontation Clause unless the witnesses are unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 54. Yet, the Court narrowed its holding to testimonial statements, explaining that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). Further, the CI's statements were non-testimonial, and thus fall outside of *Crawford*. As we held in *United States v. Tolliver*,

statements providing context for other admissible statements are not hearsay because they are not offered for their truth. *Tolliver*, *3.

In this case, the court gave the jury a limiting instruction, explaining that the CI's statements were only to provide context for the defendant's admissions on the recordings, and could not be used for the truth of the matter asserted therein. Further, while the CI did not testify, the defendant did cross-examine Agent Bray, and indirectly, was able to reach the CI's possible biases. During his cross-examination of Agent Bray, Van Sach elicited testimony that the CI had previously filed assault charges against him, that the CI had received money from the ATF, and that the CI had committed a felony while working for the ATF.

Judge Castillo twice instructed the jury not to consider the CI's statements for their truth, but rather as context for Van Sach's admissions on the tape recording. Since *Crawford's* prohibition is for testimonial hearsay, *Crawford*, 541 U.S. at 59-60 n. 9, and the declarant's statements here were offered as context evidence rather than for their truth, we conclude that the admission of the CI's statements did not offend the Confrontation Clause.

## C.  Jury Instructions

Van Sach also challenges two of the jury instructions given by the district court. He claims the district court's instructions for possession and knowledge were improper and that they had the effect of rewarding the government's failure to call the informant witness. We review a district court's decisions on jury instructions for abuse of discretion. *United States v. Messino*, 382 F.3d 704, 711 (7th Cir. 2004). We review *de novo* whether an instruction accurately summarizes the law or if it is legally erroneous. *United States v. Stewart*, 411 F.3d 825, 827 (7th Cir. 2005).

Van Sach first challenges the jury instruction for possession. Judge Castillo gave the following instruction:

> Possession of an object is the ability to control it. Possession exists when an individual holds an object, in this case a firearm, even if the handling is only momentary, as long as the individual does so knowingly and intends to handle the object. Possession may also exist even when a person is not in physical contact with the object, but knowingly has the power and intention to exercise direction or control over it, either directly or through others. A person can possess an object without owning the object provided that the person has the power and intention to control the object.

The government's burden in a § 922(g) case includes proving beyond a reasonable doubt that the defendant possessed the charged firearm. It is therefore critical that the district court clearly define the term possession for the jury.

At the jury instruction conference, stand-by defense counsel objected to the government's suggested possession instruction because it was not a verbatim version of the possession instruction approved by the Seventh Circuit in *United States v. Hendricks*, 319 F.3d 993, 1004-05 (7th Cir. 2003). Judge Castillo agreed with stand-by defense counsel and gave the instruction from *Hendricks* instead.

The possession instruction that Judge Castillo gave to the jury accurately summarized the law in this Circuit and clearly informed the jury that, in order to convict, it was required to find that Van Sach knowingly and intentionally possessed the firearm. Moreover, Judge Castillo modified the instruction so that it mirrored the possession instruction preferred by defendant and approved by this Court in *Hendricks*. The district court did not abuse its discretion in its use of the possession jury instruction.

Van Sach also challenges the knowledge instruction. Judge Castillo gave the following knowledge instruction to the jury:

> When the word "knowingly" is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, or accident. Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case.

Van Sach argues that the second sentence of the instruction should be given only in cases where the evidence presented at trial was mostly circumstantial. Yet, a significant part of the government's case against Van Sach was circumstantial. The evidence as it related to possession of the firearm consisted of tape recordings where Van Sach talked about the firearm. Further, the surveillance agents' testimony about their search of the CI and what they found before and after the firearm transaction was also circumstantial evidence. We hold that it was not an abuse of discretion for Judge Castillo to give a knowledge instruction to the jury that also addressed circumstantial evidence.

**D. 18 U.S.C. § 922(g)(1)**

Van Sach next argues that 18 U.S.C. § 922(g)(1) is unconstitutional because, in enacting this statute, Congress exceeded its power under the Commerce Clause. We have consistently rejected similar Commerce Clause challenges to § 922(g) since the "jurisdictional element of § 922(g) provides the required nexus with interstate commerce." *United States v. Hemmings*, 258 F.3d 587, 594 (7th Cir. 2001). *See, e.g.*, *United States v. Olson,* 408 F.3d 366, 372-73 (7th Cir. 2005); *United States v. Williams*, 410 F.3d 397, 400 (7th Cir. 2005). Moreover, the firearm that Van Sach sold to the CI satisfied the minimal nexus to interstate commerce

that is required. ATF Special Agent Michael Walsh testified that the firearm in question was manufactured in Montana and, thus, it necessarily traveled in interstate commerce prior to Van Sach's possession of it in Illinois. Therefore, Judge Castillo properly denied Van Sach's constitutional challenge to 18 U.S.C. § 922(g)(1).

### E.  Sentencing

Finally, we address Van Sach's challenge of the district court's application of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Van Sach argues that the district court violated his Sixth Amendment rights because the jury did not determine that his prior convictions were violent felonies beyond a reasonable doubt. He further contends that it was unconstitutional for Judge Castillo to sentence him to a term of imprisonment in excess of the statutory maximum of ten years as provided by 18 U.S.C. § 924(a)(2).[1]

At Van Sach's sentencing hearing the district court concluded that he should be sentenced under ACCA because he had three prior qualifying convictions for violent felonies.[2] As a result, Judge Castillo sentenced him to 210 months' imprisonment.

---

[1] The statutory maximum prescribed by 18 U.S.C. § 924(a)(2) states that "[w]hoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." Van Sach was convicted of violating 18 U.S.C. § 922(g).

[2] Under 18 U.S.C. § 924(e), "a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years. . . ."

While the Supreme Court has issued several recent opinions clarifying a defendant's Sixth Amendment right to jury findings that increase a defendant's sentence beyond the statutory maximum, the *Almendarez-Torres* exception has yet to be overruled. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). *Almendarez-Torres* clarified that a trial judge may determine at sentencing whether a prior conviction increases the maximum sentence that may be imposed on a defendant without violating the Sixth Amendment. *Id.* The Supreme Court's recent Sixth Amendment case law has maintained this holding. *See United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004); *Ring v. Arizona*, 536 U.S. 584 (2002); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Van Sach points to *Shepard v. United States* for support that findings regarding prior convictions should be made by the jury. 544 U.S. 13 (2005). But, Van Sach concedes that we have already decided that the *Almendarez-Torres* exception for prior convictions still stands after *Shepard. See United States v. Browning*, 436 F.3d 780, 782 (7th Cir. 2006); *United States v. Ngo*, 406 F.3d 839, 843 (7th Cir. 2005); *United States v. Williams*, 410 F.3d 397, 401 (7th Cir. 2005). *Shepard* itself acknowledges the continuing validity of the *Almendarez-Torres* exception. 544 U.S. at 24-26, 37-38 (2005) (plurality and dissenting opinions). Given the state of the law, we conclude that Van Sach's Sixth Amendment rights were not violated when Judge Castillo determined that Van Sach should be sentenced under ACCA.

Van Sach attacks the district court's findings on his prior convictions a second way. While he stipulated to a prior felony conviction pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997), and admitted at sentencing that he had a prior state robbery conviction, he contends that he was forced into the stipulation by prosecutors, the case agent, and stand-by counsel. Van Sach also argues that even if the two prior felony convictions he conceded stand,

Judge Castillo erred in determining that two other offenses qualified as predicates under ACCA.

Van Sach's claim that he was forced into the stipulation at trial finds no support in the record. When the *Old Chief* stipulation was read in open court to the jury, the government asked defendant if it was so stipulated and he responded, "Yes, sir." With no objection from Van Sach at trial and nothing in the record to suggest coercion or disagreement with the stipulation, we find the district court did not plainly err when it did not present the question of felony convictions to the jury. In *United States v. Lewis*, we explained that a defendant "waive[s] any claim under the Sixth Amendment when he t[akes] advantage of *Old Chief* to prevent the jury from learning details about his prior conviction." 405 F.3d 511, 513 (7th Cir. 2005).

The other convictions that Van Sach urges should not be included as ACCA predicate offenses were for aggravated battery, in violation of 720 ILCS 5/12-4(b)(6). The first offense in question occurred on June 14, 1994 and the second occurred on May 3, 1995. Van Sach contends that these prior convictions for aggravated battery are not violent felonies under 18 U.S.C. § 924(e).

In determining whether an offense is eligible for ACCA, the Supreme Court offers guidance for a district court, holding that the court's enquiry is "limited to the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information**."** *Shepard v. United States*, 544 U.S. 13, 26 (2005). In this case, Judge Castillo specifically acknowledged these limitations under *Shepard* and confined his analysis to the charging documents and plea colloquies from June 14, 1994, and May 3, 1995. After reviewing the documents, Judge Castillo concluded that Van Sach should be sentenced under ACCA

because these convictions for aggravated battery against police officers involved a serious potential risk of physical injury to others, and were felony offenses under 18 U.S.C. § 924(e)(2)(B). *See United States v. Hayes*, 919 F.2d 1262, 1266 (7th Cir. 1990) (aggravated battery to a police officer is a violent felony for purposes of ACCA). We therefore hold that the district court properly rejected Van Sach's Sixth Amendment claim and did not err in sentencing him under ACCA.[3]

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[3] In an additional *pro se* brief, the appellant argued that his conviction should be overturned for insufficient evidence, that the prosecution's closing argument constituted government miscon- duct, and that his sentence is unconstitutional. These claims are without merit. Additionally, Van Sach claimed that he received substandard medical care during his incarceration. This appeal is not the proper venue to pursue such a claim.