**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 6, 2006
Decided May 30, 2006

**Before**

Hon. Kenneth F. Ripple,  *Circuit Judge*

Hon. Daniel A. Manion,  *Circuit Judge*

Hon. Michael S. Kanne,  *Circuit Judge*

| | |
|---|---|
| No. 05-4139 | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division |
| United States of America, | |
| *Plaintiff-Appellee*, | No. 05 CR 7 |
| v. | **Sarah Evans Barker**, *Judge*. |
| Robert L. Baskin, | |
| *Defendant-Appellant*. | |

**O R D E R**

Robert L. Baskin pleaded guilty to possession of a firearm by a felon, reserving his right to appeal from the district court's denial of his motion to suppress evidence.  Baskin now appeals, arguing that police obtained the search warrant authorizing the search of his house based on an affidavit that contained knowingly false statements and that, therefore, the evidence obtained during the search was inadmissible.  We affirm.

I.

At about 1:00 a.m., on November 10, 2004, Tammy Stock-Wilson arrived at the home of her on-again, off-again boyfriend Robert L. Baskin. Apparently the relationship was off-again, so Stock-Wilson went to return her key to Baskin and to retrieve some personal items she had left at Baskin's home, including her .45 caliber handgun. After arriving, Stock-Wilson called

Baskin from her cell phone, but he did not answer. She then approached the front door, and finding the inside door ajar, she figured that Baskin just wanted her to come in and take her things and leave. She was wrong; as Stock-Wilson opened the screen door, Baskin burst out, grabbed her and pushed her off the porch into some bushes.

What happened next is somewhat disputed. However, it is undisputed that after Baskin pushed Stock-Wilson into the bushes, Stock-Wilson heard two or three shots and believed that Baskin had fired those shots. Stock-Wilson hid in her car and called 911 for assistance.

Officers Steven Ferklic and John Reichly responded to the 911 call. Several other officers were either already on the scene, or arrived later to help in the investigation, including Detective Thomas Lehn, Jr., Officer Marlin Sechrist, Officer John Richle, and Officer Daniel Huber, the latter of whom was patrolling near Baskin's residence at the time and heard the shots. Officer Ferklic found Stock-Wilson by her car, scraped and bleeding from being pushed into the bushes. Officer Sechrist discovered two .45 caliber shell casings, one on the porch and one in the grass near the porch, and he pointed these out to Officer Ferklic. Officer Ferklic and Detective Lehn each spoke separately with Stock-Wilson. They both maintain that Stock-Wilson stated that Baskin had pushed her into the bushes and then shot at her.

The officers requested permission from Baskin to search his house for the weapon, but Baskin refused. After being denied access, Officer Ferklic, with the help of Detective Lehn, prepared a search warrant application and affidavit. In the affidavit, Officer Ferklic attested, as follows:

> At approximately 1:42 a.m., November 10, 2004, Officers received a 911 call to 1614 N. Centennial St., on a call of shots fired. Officer Dan Huber was in the area and heard the shots. I, Officer Ferklic responded and saw Robert Baskin, B/M/37, 8/21/67, inside the house. I also saw Tammie Stock Wilson, W/F/39, 8/21/67 [sic], standing next to her car on the street in front of 1614 N. Centennial St. I also found a spent .45 caliber shell casing on the porch and another on the ground, just south of the porch.

> I spoke with Wilson who told me she came to the house to retrieve her .45 caliber pistol from Baskin. She said she called from outside and walked on the front step of the house. Baskin came to the porch and pushed her into the bushes. Before he pushed her, she could see a pistol in his hand. She said when she was in the bushes, Baskin fired two shots from the porch. She said he then went inside 1614 N. Centennial with the pistol in his hand, and then came back outside without the pistol. Officers were arriving when he stepped back inside. All events occurred in Marion County, IN.

Based on this affidavit, a state judge issued a search warrant at 4:05 a.m., which Officer Ferklic and other officers executed at 4:15 a.m. During the search, officers found a loaded .45 caliber, semi-automatic pistol, the original box in which the pistol was sold, and a box of .45 caliber ammunition. Officers arrested Baskin and a grand jury later indicted him with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).[1]

Baskin moved to suppress the evidence recovered during the search of his home, arguing that Officer Ferklic's search warrant affidavit included false statements. Following an evidentiary hearing, the district court denied the motion. Baskin then entered a conditional guilty plea, reserving the right to appeal from the denial of his motion to suppress. The district court sentenced Baskin to 60 months' incarceration. Baskin now appeals the denial of his motion to suppress.

## II.

A defendant seeking to suppress evidence seized pursuant to a search warrant based upon a claim that the affidavit contained false information must prove by a preponderance of the evidence that: (1) the affidavit contained false information; (2) the false information was included intentionally or with reckless disregard of the truth; and (3) the false information was necessary to establish probable cause. *United States v. Whitley*, 249 F.3d 614, 620 (7th Cir. 2001). This court reviews "legal determinations concerning the validity of a warrant and probable cause determinations de novo." *United States v. Dennis*, 115 F.3d 524, 528 (7th Cir. 1997). Questions of fact are reviewed for clear error. *United States v. Stribling*, 94 F.3d 321, 323 (7th Cir. 1996).

On appeal, Baskin claims that the affidavit contained false information. First, Baskin asserts that Officer Ferklic falsely stated that Stock-Wilson had told him that "[b]efore [Baskin] pushed her, she could see a pistol in his hand." At the suppression hearing before the district court, Stock-Wilson testified that she never saw a gun in Baskin's hands and that she did not tell any of the officers that she had. Officer Ferklic, however, testified that Stock-Wilson told him that she "didn't initially see any handgun and believed it was behind her or behind him. He just had it in his right hand and was hiding it slightly behind his right thigh." Officer Ferklic further testified that "[a]t what point in time she actually saw [the gun], I didn't clarify that issue. Based on . . . her conversation with me, she stated to me that she had seen the handgun during the entire incident." Detective Lehn also testified that Stock-Wilson told him she had seen a gun in Baskin's hand.

---

[1] Stock-Wilson bailed Baskin out of jail because, according to her testimony at the suppression hearing, she felt threatened by the "whole situation."

While acknowledging some discrepancy between Officer Ferklic's affidavit statement that "[b]efore he pushed her, [Stock-Wilson] could see a pistol in [Baskin's] hand" and his suppression testimony that Stock-Wilson "didn't initially see any handgun and believed it was behind her or him," the district court nonetheless found that Stock-Wilson had told Officer Ferklic and the other law enforcement officers that she had seen a gun in Baskin's hands at some point during the incident. In so ruling, the district court expressly rejected Stock-Wilson's testimony, finding that "Stock-Wilson's testimony at the hearing was not reliable in terms of the specifics she imparted to the officers the night of Baskin's arrest." The district court found Stock-Wilson's credibility lacking for four reasons.

First, she admitted that on the night in question she was quite agitated and upset with Baskin. Second, she has conceded that because of her anger with Baskin she may have exaggerated what she told the police that night. Third, that night at the scene after police arrived she spoke independently with two IPD officers, Ferklic and Lehn, whose respective incident notes recording what she told them conflict with the testimony she gave in court, but are consistent with the information in the probable cause affidavit. Fourth, Stock-Wilson admits that when she spoke with ATF Special Agent Jensen a month after her confrontation with Baskin, she told him a version of events that was at odds with her testimony in court but which was consistent with the information contained in the probable cause affidavit.

In reviewing the denial of a motion to suppress, this court reviews credibility determinations and findings of fact for clear error. *United States v. Pittman,* 418 F.3d 704, 706 (7th Cir. 2005). In this case, the district court could reasonably believe that Stock-Wilson's past relationship with Baskin and the fact that her earlier statements would now be responsible, in part, for putting Baskin back in jail, made her less than credible. Similarly, Stock-Wilson's admission that she was pretty upset the night of the incident and "probably a little exaggerative," makes it more likely that she in fact told the officers that she had seen a gun in Baskin's hand, even if she had not. Moreover, Stock-Wilson's testimony at the suppression hearing contradicted not just Officer Ferklic's testimony, but also Detective Lehn's. Specifically, Detective Lehn testified that the night of the incident Stock-Wilson had told him that Baskin had a gun in his hand when he came onto the porch. Stock-Wilson argues that this evidence is irrelevant because Officer Ferklic's affidavit stated that she had told *him* (Officer Ferklic) that she had seen a gun in Baskin's hands, not that she had told this to Detective Lehn, who then told Officer Ferklic. However, that Stock-Wilson told Detective Lehn that she had seen a gun in Baskin's hands makes it more likely that she had also told Officer Ferklic the same thing. Furthermore, Detective Lehn's testimony calls into question Stock-Wilson's testimony at the suppression hearing, further supporting the district court's finding that Stock-Wilson was not credible. Based on these facts, then, the district court did not commit clear error in disbelieving

her testimony and concluding that on the night of the incident, Stock-Wilson had told Officer Ferklic that she had seen the weapon in Baskin's hands.[2]

Stock-Wilson next argues that Officer Ferklic's statement that she had told him that "when she was in the bushes, Baskin fired two shots from the porch," was false. Stock-Wilson claims that she was walking toward her car and not in the bushes at the time the shots were fired. However, the fact that shots were fired, rather than her location during the shooting, was the critical fact, and where Stock-Wilson stood at the time of the shooting was completely irrelevant to the question of probable cause. Stock-Wilson further testified that she never said that she *saw* Baskin fire the shots. However, Officer Ferklic testified that while Stock-Wilson did not specifically see the shots being fired, that she made clear in her statement that Baskin had fired the shots. Stock-Wilson also admitted at the suppression hearing that about a month after the incident she told ATF Special Agent Jensen that Baskin had fired the shots at her or in her direction. Additionally, Detective Lehn testified that Stock-Wilson told him that Baskin fired two shots in her direction.[3] Given Stock-Wilson's statements to Detective Lehn and Agent Jensen, the district court did not commit clear error in finding that she also made a similar statement to Officer Ferklic.

Baskin next claims that Officer Ferklic's statement in his affidavit that after the shooting, Baskin "then went inside 1614 N. Centennial with the pistol in Baskin's hand, and then came back outside without the pistol," was false. In making this argument, Baskin relies on Stock-Wilson's testimony that she had never seen a pistol in his hands. Baskin also points to Stock-Wilson's testimony that after Baskin went into his house, she did not see him again until the officers brought him out in handcuffs. Conversely, Officer Ferklic and Detective Lehn testified that Stock-Wilson had told them both separately that after the shots were fired, Baskin went into the house with the gun and came back outside without it. As noted above, the district court concluded that Stock-Wilson was not credible, and we defer to a district court's assessment of credibility. *United States v. Sholola*, 124 F.3d 803, 811 (7th Cir. 1997). Therefore, the district court did not err in accepting Officer Ferklic and Detective Lehn's testimony and concluding that

---

[2] Stock-Wilson also argues that even if she had told Officer Ferklic that she had seen the gun in Baskin's hands at some point during the incident, she did not tell Officer Ferklic that she had seen the gun in his hands when Baskin first exited the house. However, as the district court found, any such discrepancy was irrelevant to the probable cause determination

[3] In addition to relying on Officer Lehn's testimony, the district court stated that Detective Lehn's notes from the evening in question indicate that Stock-Wilson had told him that she had seen Baskin fire the shots. Baskin claims that since those notes were not in evidence that the district court erred in relying on them. It does not appear that the district court entered Detective Lehn's notes into evidence. However, the notes added nothing to Officer Lehn's testimony and therefore any reliance on the notes was harmless.

Baskin had failed to establish that Officer Ferklic's statement in the search warrant affidavit that Baskin entered the house with the gun and then exited without out it was false.[4]

Up to this point we have evaluated the allegedly fraudulent statements separately, but even considering the statements together and even further assuming they all were false, the undisputed facts were still more than sufficient to establish probable cause that a gun would be found inside the residence. *See United States v. Whitley*, 249 F.3d 614, 620 (7th Cir. 2001) (holding that to succeed on a motion to suppress, among other things, the false information contained in the search warrant affidavit must be necessary to establish probable cause). Specifically, Officer Ferklic testified that Stock-Wilson told him that she had gone to Baskin's house to retrieve her handgun that she had left at Baskin's residence and that after Baskin threw her in the bushes, she believed Baskin had fired a gun and then reentered his house. Although Stock-Wilson claims she did not *see* the gun, *see* Baskin fire the gun, or *see* Baskin go back inside his house, Stock-Wilson does not dispute that she told officers that she heard the door slam as if Baskin had gone back inside, that she heard the gunshots, and that she assumed Baskin had fired the weapon. Additionally, while the officers recovered shell casings in the vicinity of the shooting, they did not recover any weapon. Based on these facts, and without consideration of any of the allegedly false information contained in the affidavit, there was probable cause to believe that the gun Stock-Wilson had left in Baskin's house and which she was seeking to retrieve in the early morning hours of November 10, 2004, would be found there. Therefore, the district court properly denied Baskin's motion to suppress the evidence obtained during the search of his house.

III.

To succeed on a motion to suppress evidence seized pursuant to a search warrant based on a claim that the affidavit contained false information, Baskin needed to prove by a preponderance of the evidence, among other things, that the affidavit contained false information. He has failed to do that. Moreover, Baskin's motion to suppress could not succeed because he failed to show that the allegedly false information was necessary to establish

---

[4] Before the district court, Baskin also argued that Officer Ferklic's claim that he "also found a spent .45 caliber shell casing on the porch and another on the grounds, just south of the porch," was false because Officer Feklic was not the first to find the shell casings. Rather, Officer Sechrist discovered the shell casings and pointed them out to Officer Ferklic. Baskin does not seem to present this argument on appeal, but it would fail regardless because the fact that another officer first discovered the shell casings before pointing them out to Officer Ferklic does not make Officer Ferklic's statement that he "found" the shell casings on the porch and ground false. Officer Ferklic did in fact "find" them in those locations—he just was not the first to do so. In any event, even if this statement were false, it is completely immaterial to the question of probable cause because the existence and location of the casings is not disputed.

probable cause.  Accordingly, the district court did not err in denying his motion to suppress. We AFFIRM.