In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3172

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES HUMPHREYS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 480—**John W. Darrah**, *Judge*.

ARGUED SEPTEMBER 12, 2006—DECIDED NOVEMBER 21, 2006

Before COFFEY, ROVNER, and EVANS, *Circuit Judges*.

COFFEY, *Circuit Judge*. James Humphreys was convicted after a jury trial of possession of a firearm by a felon. *See* 18 U.S.C. § 922(g)(1). The district court found that he had three prior felony convictions for violent crimes and sentenced him to fifteen and one half years' imprisonment under the Armed Career Criminal Act ("ACCA"). *See* 18 U.S.C. § 924(e)(1). On appeal Humphreys challenges his conviction and sentence on three grounds and alleges that: (1) the evidence at trial was insufficient to establish that the firearm he possessed had traveled in interstate commerce; (2) the indictment failed to adequately allege a nexus with interstate commerce; and (3) the district court relied on inadequate evidence in ruling that one of his prior

convictions was a "violent felony" for purposes of the ACCA. We affirm.

## I.  Background

On December 9, 2002, Humphreys—who was a truck driver for the Shawn Trimble Trucking Company located in Chicago, Illinois—was dispatched by Shawn Trimble for a pick-up and delivery, but he failed to pick up his assigned load and never made any delivery. Trimble was unable to reach him by telephone the next day, and thus he reported that his truck had been stolen to the Chicago Police Department. When Trimble finally reached Humphreys by telephone on December 11th, Humphreys claimed the truck was hijacked, and he was forced to witness a murder. Humphreys added that the hijackers made him handle the gun used in the murder so it would have his fingerprints on it, and then left the gun with him.

Trimble asked Humphreys to return the truck, and he agreed to do so. But Trimble instructed another employee to call the police as soon as Humphreys arrived. When he arrived, Trimble asked to see the gun, and Humphreys took it out of a duffle bag and showed it to him. At this time, Trimble suggested to Humphreys that he place the gun back in his duffel bag. A few minutes later, two police officers arrived and took Humphreys into custody. The officers conducted a custodial search of Humphreys's duffel bag and found the gun.

The parties stipulated that Humphreys was previously convicted of a felony. At trial the government called Trimble and the two police officers to testify that Humphreys possessed the gun. The government also presented Michael Casey, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, as an expert witness to testify to the existence of a commerce nexus. To support his qualification as an expert, Casey testified that he was trained in

firearms identification and had identified between 1,500 and 2,000 firearms in his 25 years as a law enforcement officer. Humphreys failed to object when the district court qualified Casey as an expert witness.

Casey testified that the gun found in Humphreys's bag was manufactured by the High Standard Manufacturing Corporation in Hamden, Connecticut, and thus, in his opinion, had traveled in interstate commerce. When the government asked Casey for the basis of his opinion, he explained that he could identify the gun's manufacturer "based on its stampings." The barrel of the gun was stamped with the words "High Standard Mfg. Corp. Hamden, Conn. USA." Casey also said he conducted research to "verify" that High Standard did manufacture firearms of that type but had never done so in the state of Illinois. On cross-examination, Casey acknowledged that he never attempted to trace the serial number of the gun, but he was not asked why and did not volunteer an explanation. The jury returned a verdict of guilty.

In preparing the presentence report, the probation officer determined that Humphreys was subject to an enhanced sentence under the ACCA, based on his prior convictions for bank robbery, armed robbery, and aggravated battery. Humphreys responded with a written sentencing memorandum in which he conceded that the two robbery convictions do count as violent felonies, *see* 18 U.S.C. § 924(e)(2)(B), but argued that the third predicate conviction—for aggravated battery on a public way, *see* 720 ILCS 5/12-4(b)(8)—did not qualify because the Illinois statute could be satisfied in a way that did not require the use of force. The district court concluded after reviewing the charging information and transcripts from the state-court proceedings that the commission of the aggravated battery involved "striking the victim," which qualifies as a "use . . . of physical force against the person of another" and falls within the parameters of the first prong of the ACCA's definition of "violent

felony." *See* 18 U.S.C. § 924(e)(2)(B)(I). The court applied a base offense level of 33, *see* U.S.S.G. § 4B1.4(b)(3)(B), against a criminal history category of IV, *see id.* § 4B1.4(c)(3), and arrived at a Sentencing Guidelines imprisonment range of 188 to 235 months. In selecting a sentence in that range, the court identified two factors that somewhat mitigated Humphreys's "significant criminal history:" his most recent conviction, the aggravated battery, occurred more than three years before his current offense, and he committed the aggravated battery "at least in part" because he believed he was "defending someone else." The court decided that a sentence at the "lowest end of the guidelines would be appropriate to meet the ends of the statute," and sentenced Humphreys to 188 months' imprisonment and five years' supervised release.

## II. Analysis

### A. Sufficiency of the Evidence

Humphreys argues that the government failed to meet its burden on the commerce element of § 922(g) because, in his view, the evidence established only that the *barrel* of the gun had traveled in interstate commerce. He argues that the barrel cannot alone satisfy the statutory requirement, and that because barrels are interchangeable, nothing about the origin of the rest of the gun may fairly be inferred.

We refuse to accept Humphreys's very speculative and self-serving interpretation of the evidence. The expert testified that the gun—and not just the barrel—traveled in interstate commerce. The expert stated that the weapon was manufactured in Hamden, Connecticut by a company that had never manufactured any weapon in the state of Illinois. He also stated that the gun was not a counterfeit weapon. Thus, there was no need for the jury to rely on any assumption in concluding that the gun had traveled in

interstate commerce, since "[t]he requisite interstate commerce nexus can be established . . . merely by evidence that the gun was manufactured outside the state in which it was possessed." *United States v. Coleman*, 22 F.3d 126, 130-31 (7th Cir. 1994); *see also United States v. Van Sach*, 458 F.3d 694, 703 (7th Cir. 2006) (required commerce nexus existed where gun was manufactured in Montana and possessed in Illinois); *United States v. Williams*, 403 F.3d 1188, 1195 (10th Cir. 2005) (testimony that a gun manufactured in California and possessed in Kansas was sufficient to establish commerce nexus); *United States v. Scott*, 263 F.3d 1270, 1274 (11th Cir. 2001) (per curiam) (same where gun was manufactured in California and possessed in Georgia); *United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) (likewise where a gun expert testified that gun was manufactured outside of the state where it was possessed).

Essentially, Humphreys argues that there is insufficient evidence to support his conviction because he speculates that the jury could not rule out that part of the gun may have been manufactured in Illinois. But in reviewing the sufficiency of the evidence presented at trial, we view the evidence "in the light most favorable to the government," and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Maholias*, 985 F.2d 869, 874 (7th Cir. 1993). "[A]lternative explanations alone, even if plausible, do not ordinarily overcome the defendant's burden in challenging the sufficiency of the evidence." *United States v. Romero*, 57 F.3d 565, 570 (7th Cir. 1995). This is because "the law does not require the government to *disprove* every conceivable hypothesis of innocence in order to sustain a conviction on an indictment proved beyond a reasonable doubt." *United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir. 1991) (emphasis in original). Humphreys had ample opportunity via the means of an

exhaustive cross-examination to test his hypothesis that the entire gun did not travel in interstate commerce, and we refuse to allow Humphreys to prevail on appeal on the basis of an impeachment theory he failed to test in the trial court.

Humphreys also proposes that the government's failure to trace the serial number undermined the evidence that the weapon was manufactured in Connecticut. But as the authority he cites indicates, *see* 2 Wigmore on Evidence § 285 (Chadbourn rev. 1979); *see also United States v. Tucker*, 552 F.2d 202, 210 (7th Cir. 1977), the nonproduction of evidence that normally would have been produced merely *permits* an inference that such evidence would be unfavorable to the producing party, but that inference is not *compelled*. Humphreys complains that the expert never explained why he failed to trace the serial number, but the expert was never asked why, by either the prosecution or defense counsel. Nor is it the obligation of the judge who is presumed to be impartial and must conduct himself or herself in that manner. Humphreys points to no case in which a court has overturned a conviction under § 922(g) simply because the government failed to have the serial number traced, and we could find none. The only relevant case we found, in fact, rejected a suggestion that an expert's testimony is deficient if he does not "rely on the markings on the firearm," including the serial number. *See United States v. Corey*, 207 F.3d 84, 90-91 (1st Cir. 2000).

## B. Inadequacy of the Indictment

Humphreys next claims that the indictment was inadequate with respect to the commerce element. But since its allegation that "the firearm had traveled in interstate commerce prior to the defendant's possession of the firearm" is at the heart of the issue raised and nothing else is required, *see United States v. Hubbard*, 61 F.3d 1261, 1269 (7th Cir. 1995); *United States v. McCarty*, 862 F.2d

143, 145-46 (7th Cir. 1988), we conclude, and Humphreys acknowledges, that he is really challenging the constitutionality of § 922(g)(1) as applied to him.

In Humphreys's view, "recent Supreme Court precedent" demands that § 922(g) be interpreted to require a "substantial effect" on commerce rather than the "minimal" nexus we have considered constitutionally sufficient. That argument, however, is one that we have repeatedly rejected. *See Van Sach*, 458 F.3d at 703; *United States v. Williams*, 410 F.3d 397, 400 (7th Cir. 2005), *cert. denied*, 126 S.Ct. 1182 (2006); *United States v. Peterson*, 236 F.3d 848, 852 (7th Cir. 2001). Because § 922(g)(1) "requires proof that the defendant possessed a firearm 'in or affecting commerce,' [it] represents a valid exercise of congressional authority under the Commerce Clause." *Williams*, 410 F.3d at 400.

### C. Violent Felony under the ACCA

Humphreys also contends that even if his conviction can be sustained, his sentence must be vacated because the district court erred in finding that his aggravated battery conviction is a violent felony for purposes of the ACCA. He contends that under the Illinois statute aggravated battery may be nonviolent, and that the only "legitimate" items of evidence for proving that his particular conviction involved violence are inadequate under *Shepard v. United States*, 544 U.S. 13, 16 (2005). *Shepard* holds that a court should look to the statutory elements, charging documents, and judicial findings of fact to determine whether a previous conviction was for a violent felony. *Id.* at 16. In this case, Humphreys argues that the charging information and the state judge's findings of fact are too "ambiguous" to support the district court's finding that his conviction for aggravated battery involved violence.

Whether an aggravated battery under the Illinois statute may in some cases be nonviolent—and that contention

is under some doubt given statements in our previous decisions, *see United States v. Thigpen*, 456 F.3d 766, 770 (7th Cir. 2006) ("[U]nder Illinois law, aggravated battery involves the use or threatened use of force against another person and . . . also meets the requirements for a crime of violence."); *United States v. Wallace*, 326 F.3d 881, 886 (7th Cir. 2003) ("On appeal, Wallace concedes that aggravated battery and second-degree murder qualify as violent felonies . . . ."); *United States v. Morales*, 902 F.2d 604, 605 (7th Cir. 1990) (noting that defendant "had four previous convictions—one for rape, one for attempted rape, and two for aggravated battery, and these are all violent felonies")—we find that in this case, it was violent. The charging information states that "James Humphries [sic] and Diane Battle struck Warren Cook in the head with a gun, while they were on or about a public way." This adequately demonstrates that the conviction involved the use of force, and therefore satisfies the ACCA's first alternative definition of "violent felony." *See* 18 U.S.C. § 924(e)(2)(B)(I).

Humphreys argues that he was not the sole defendant and that it cannot be determined whether he personally engaged in any violent conduct under the charging information alone. But Humphreys and his co-defendant were both charged with striking Cook with a gun, and under Illinois law, Humphreys could have been convicted of the offense as a principal or as an aider or abettor to his co-defendant. 720 Ill. Comp. Stat. § 5/5-2(c); *see also Brumley v. DeTella*, 83 F.3d 856, 862-63 (7th Cir. 1996). When considering the totality of the evidence produced at trial and the charging information, we are convinced that the judge concluded that Humphreys played one role or the other when he convicted Humphreys of aggravated battery, and this court has held that a conviction for aiding and abetting in the crime may constitute a violent felony under the ACCA. *See United States v. Groce*, 999 F.2d 1189, 1191-92 (7th Cir. 1993). We

have no doubt that it was proper pursuant to the statute for the sentencing judge to construe Humphreys's conviction for aggravated battery under Illinois law as a violent felony under the ACCA.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*