In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3609

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KHALIL SARRAJ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cr-00547-1—**Virginia M. Kendall**, *Judge.*

ARGUED SEPTEMBER 13, 2011—DECIDED JANUARY 6, 2012

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant Khalil Sarraj sought to buy guns in Illinois, allegedly for personal protection, after he was assaulted during a dispute with criminal associates. Unluckily for Sarraj, the person he asked for help acquiring guns was a confidential informant for the Bureau of Alcohol, Tobacco, Firearms, and Explosives. After determining that Sarraj was a convicted felon, federal agents sold him two handguns,

both manufactured outside the state of Illinois, in a "reverse sting" operation, one in which agents posed as sellers rather than buyers of contraband. Sarraj pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Sarraj's guilty plea was conditioned on reservation of his right to challenge the way in which the government proposed to prove the interstate commerce element of the federal crime.

On appeal, Sarraj asserts that principles of federalism and the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995), require limits on the reach of section 922(g)(1). Sarraj believes that reverse sting operations violate those limits because they allow federal agents to create the required ties to interstate commerce by choosing so-called "prop" guns that were manufactured out of state. As he views the issue, this device allowed agents improperly to "federalize" what would otherwise have been a purely local gun-possession offense. Sarraj attempts to distinguish substantial precedent treating this type of law-enforcement operation as constitutional. We have previously evaluated and described the requirements for satisfying the interstate commerce element in section 922(g)(1) prosecutions, and the element was properly satisfied here.

Sarraj also fails to account for the substantial practical consequences of the rule he suggests, which could invalidate many federal prosecutions based on similar reverse stings. We decline to prohibit reverse stings when federal agents and prosecutors provide the grounds for treating the matter as a federal crime. Although de-

fendants may prefer to be prosecuted for similar state crimes, or to escape prosecution entirely because of differing state enforcement priorities and resources, the federal Constitution is not offended by the choice of federal prosecution under concurrent federal criminal statutes, including the choice to provide a required federal nexus element of the crime. We do not review executive branch decisions concerning whether and how to investigate and prosecute state or federal crimes absent allegations of illegality or invidious bias in those decisions, and there were none in this case. We affirm Sarraj's conviction and sentence.

I. *Factual and Procedural Background*

In June 2009, defendant Sarraj was attacked in his home by two associates — alleged co-conspirators in a prescription narcotics conspiracy — during an apparent failed robbery attempt. After his attackers were sentenced in state court to just ten days in jail, Sarraj became angry and stated in open court that he would find some guns and shoot his former associates if he ever encountered them again. Sarraj knew that his prior felony conviction made it illegal for him to possess firearms. But Sarraj ignored that restriction and proceeded to enlist the help of an acquaintance in obtaining the desired guns. Sarraj said that he wanted untraceable weapons with the serial numbers filed off.

Sarraj's acquaintance was actually a confidential informant who told agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives of Sarraj's wishes. Agents

prepared to pose as undercover gun sellers, selecting several weapons from the Bureau's collection of prop guns for use in reverse sting sales to prospective gun buyers. The confidential informant introduced Sarraj to the undercover agents, and the sting was carried out in an Illinois grocery store parking lot on June 24, 2009. After handling several guns and confirming that the serial numbers had been removed, Sarraj purchased a Smith and Wesson .357 revolver and a Browning/Fabrique Nationale .380 semi-automatic handgun.

To ensure that a purchase by Sarraj would violate federal law, the guns offered by the agents had been manufactured outside the state of Illinois, though their manufacturing origin was not discussed during the sale. See, *e.g.*, *United States v. Rice*, 520 F.3d 811, 815 (7th Cir. 2008) (holding that "as long as a firearm moved across state lines at some point prior to the defendant's possession of it, the possession satisfies § 922(g)(1)'s 'in or affecting commerce' requirement"). Sarraj was the proud owner of the two guns for as long as it took him to walk from the agents' vehicle to his own and to stow the guns in his trunk. At that point, other agents arrested Sarraj. He was eventually charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

In the district court, Sarraj filed a Motion for Modified Jury Instruction Concerning Whether ATF Prop Firearms "Affected" Interstate Commerce. The motion argued that the ATF had removed the subject guns from the stream of interstate commerce when it took the guns off

the private market and added them to the Bureau's prop gun collection. Accordingly, Sarraj argued, the guns would not have been "in or affecting commerce" when they were sold to him, as needed to meet the interstate commerce requirement of section 922(g)(1). This argument, if accepted, would distinguish reverse sting operations from the scenario, common in the case law, of a felon who is merely caught with a gun that was manufactured outside the state. The district court heard argument on this issue and denied Sarraj's motion in a written memorandum. The court correctly found no support in our cases for the distinction proposed by Sarraj. Other arguments made by Sarraj in the motion were not explicitly addressed by the court in its denial, but are relevant to the waiver issue discussed below.

Sarraj renewed these arguments in a motion to dismiss the indictment that incorporated "all of the points, authorities, and arguments" from his prior motion to modify the jury instruction. The court denied the motion to dismiss and the next day held a plea agreement hearing in which Sarraj entered a conditional plea of guilty to the felon-in-possession charge. Sarraj conditioned his plea on reserving his right to appeal the court's earlier denials of his motion to modify the jury instruction and motion to dismiss the indictment (as well as any sentencing issues). Sarraj was sentenced to serve 56 months in federal prison and now appeals.

II. *The Waiver Issue*

Before addressing the merits of Sarraj's argument, we must confront the government's assertion that Sarraj

has shifted his arguments so much that his appeal falls outside the scope of the right to appeal that he preserved with his guilty plea. In the district court, Sarraj chiefly complained that agents had taken the prop guns out of the stream of interstate commerce, cleansing the guns of their interstate character. Here Sarraj argues that the agents' affirmative choice of prop guns with an interstate commerce history operated to manufacture authority and offended general federalism concerns. Sarraj does not argue that section 922(g)(1) is facially unconstitutional, possibly because we have rejected such challenges so often that to continue to bring them might be considered frivolous. See, *e.g.*, *United States v. Van Sach*, 458 F.3d 694, 703 (7th Cir. 2006); *United States v. Gillaum*, 372 F.3d 848, 862 (7th Cir. 2004) (collecting cases); *United States v. Mitchell*, 299 F.3d 632, 633-34 (7th Cir. 2002) (same). Sarraj instead attacks the subset of section 922(g)(1) applications that involve reverse stings. The government objects that this new formulation on appeal was waived. *E.g.*, *United States v. Cain*, 155 F.3d 840, 843 (7th Cir. 1998) (dismissing portion of appeal raising suppression issue that defendant failed to preserve).[1]

---

[1] The *Cain* opinion phrased this dismissal in terms of a lack of "jurisdiction" over that portion of the appeal. In view of the Supreme Court's more recent efforts to confine the use of the term "jurisdiction" to those matters affecting the court's power to act, see, *e.g.*, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006), it is better to think of the problem in terms of simple

(continued...)

Sarraj's arguments on appeal could have been forfeited if he failed to present them to the district court, or waived if he presented the arguments but agreed in his plea not to bring them here. We must determine whether the arguments were adequately presented in Sarraj's pretrial motions, and if so, whether they were also preserved in his conditional plea agreement. See *United States v. Doherty*, 17 F.3d 1056, 1059 (7th Cir. 1994) (finding waiver of a duplicity issue not mentioned in defendants' motion to dismiss an indictment).

We are satisfied that Sarraj presented a sufficiently clear version of his appeal arguments to the district court before that court denied his motion to dismiss. For example, in his reply in support of his motion to modify the jury instruction, Sarraj characterized his argument as an as-applied constitutional challenge, and argued that section 922(g)(1) "does not federalize every gun possession." Sarraj also expressly incorporated that reply brief into his subsequent motion to dismiss. In the district court, the defense developed more fully the related removal-from-commerce theory in briefs, and the district court also focused its denial on that aspect. But an advocacy choice, selecting particular arguments for emphasis, does not operate to waive other

---

[1] (...continued)

waiver rather than appellate jurisdiction. Accord, *United States v. Cotton*, 535 U.S. 625, 630 (2002) (narrowing use of "jurisdiction" in criminal law context). The government's waiver argument is not one we would be required to raise on our own, indicating that it is not jurisdictional in the strict sense.

arguments that were still properly presented to the district court. See *United States v. Black*, 636 F.3d 893, 898 (7th Cir. 2011) ("While [defendant] may not have fully developed nor articulately presented the exact argument below, he did raise the issue . . . ."). Sarraj presented and did not abandon the arguments he relies on here. We turn next to the effect of the conditional plea on preservation of issues for appeal.

Federal Rule of Criminal Procedure 11(a)(2) allows a defendant, with "consent of the court and the government," to condition a guilty plea on the defendant's right to appeal from an adverse determination of a specified pretrial motion. When the facts underlying the offense are largely uncontested and the pretrial ruling would control the outcome, as here, a conditional plea allows everyone involved to avoid the wasteful exercise of going through an entire trial just so the defendant can adequately preserve the controlling pretrial issue for appeal. See Fed. R. Crim. P. 11 advisory committee's notes to 1983 amendments. Without Rule 11(a)(2), an unconditional guilty plea would concede the point of pretrial objection along with everything else. At the same time, the rule does not create a flood of de facto interlocutory appeals because, to travel this road to the courts of appeals, a defendant must first enter a guilty plea — thereby giving up all other possible issues on which he might contest the charge.

The scope of Sarraj's right to pursue an appeal was set forth in the plea agreement and was confirmed during the plea colloquy. The agreement did not require Sarraj

to present his arguments in exactly the same way and with the same emphasis that he gave them in the district court. The plea agreement left Sarraj free to select and assert on appeal any argument from the set of arguments he adequately presented to the district court. Sarraj's conditional plea reserved the right to appeal from the "identified pretrial rulings" generally. The government cites *Doherty*, 17 F.3d at 1058, where we held that the conditional plea therein reserved only the right to appeal "on the ground the motion had stated." In *Doherty*, however, the motion had stated only one ground, and the issue presented on appeal had not been raised in the district court at all. *Id.* Sarraj preserved his right to challenge the district court's denial of his motion to dismiss and did not limit that appeal to a precise replay of district court advocacy and reasoning. Finding no waiver, we turn to the merits of Sarraj's contention that principles of federalism render section 922(g)(1) unconstitutional as applied to the reverse sting operation that snared him.

III. *Reverse Stings and the Interstate Commerce Element*

Sarraj does not challenge any factual basis for the indictment but instead disputes its legal sufficiency. "We review questions of law in a district court's ruling on a motion to dismiss an indictment de novo." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). Sarraj also does not dispute that Congress was operating within its enumerated commerce power in enacting section 922(g)(1) and thereby making a federal crime out of a felon's

firearm possession "in or affecting commerce." His constitutional arguments focus on reverse sting operations by agents seeking to enforce section 922(g)(1) — though by their own logic the arguments would admittedly apply to all reverse stings where the government, rather than the defendant, is the party responsible for creating the interstate nexus.[2]

We have repeatedly and consistently held that a firearm's single past journey across a state line satisfies the interstate commerce element of section 922(g)(1). See, *e.g., United States v. Rice*, 520 F.3d 811, 815 (7th Cir. 2008) ("as long as a firearm moved across state lines at some point prior to the defendant's possession of it, the possession satisfies § 922(g)(1)'s 'in or affecting commerce' requirement"), citing *Scarborough v. United States*, 431 U.S. 563 (1977). We have also specifically addressed whether the Supreme Court's *Lopez* decision narrowed the scope of section 922(g)(1), and we have repeatedly found that it did not. *E.g., United States v. Lemons*, 302 F.3d 769, 772 (7th Cir. 2002) (collecting cases); *United States v. Lewis*, 100 F.3d 49, 52 (7th Cir. 1996). *Lopez* dis-

---

[2] The interstate commerce element of the section 922(g)(1) crime is often described loosely as the "jurisdictional" element. As we have explained in a very similar context, it is better understood as simply one element of the crime; it does not affect the court's subject matter jurisdiction. See *United States v. Skoczen*, 405 F.3d 537, 541-42 (7th Cir. 2005) (affirming conviction for conspiring to steal goods from interstate commerce where federal agents ensured that goods in question had moved in interstate commerce).

tinguished the statute it invalidated from those like section 922(g)(1) containing an interstate commerce element that "would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." See *Lopez*, 514 U.S. at 561-62, referring to *United States v. Bass*, 404 U.S. 336 (1971), and a predecessor statute prohibiting possession "in commerce or affecting commerce."

As a practical matter, we have held that the required interstate nexus under section 922(g)(1) can be established "merely by evidence that the gun was manufactured outside the state in which it was possessed," from which we infer that the gun must have traveled in interstate commerce at least once. *United States v. Humphreys*, 468 F.3d 1051, 1053 (7th Cir. 2006). The interstate nexus requirement is a factual predicate, not a mens rea element of the crime that would require proof of defendant's knowledge of facts supporting the nexus. See *United States v. Lindemann*, 85 F.3d 1232, 1241 (7th Cir. 1996) ("Thus it has consistently been held that for statutes in which Congress included an 'interstate nexus' for the purpose of establishing a basis for its authority, the government . . . need not prove that the defendant knew the 'interstate nexus' of his actions."); *United States v. Castor*, 937 F.2d 293, 298 (7th Cir. 1991) (same). A history in or affecting interstate commerce is only a necessary property of the subject gun, not something the defendant must know. That interstate history operates to establish federal authority under our Constitution of limited powers, but it does not in

any way add to, or subtract from, the wrong that is addressed by felon-in-possession statutes. It follows that the defendant need not have been involved with bringing the gun into the state, nor is there a time limit or other requirement of a temporal link between the interstate movement and the defendant's possession. See *Lemons*, 302 F.3d at 771; *Rice*, 520 F.3d at 816. A firearm can be stashed away in a friend's closet for decades prior to a defendant's offending possession, and can still satisfy the required interstate nexus. See, *e.g.*, *Lewis*, 100 F.3d at 52. By the same reasoning, the firearm can satisfy the nexus even if it has been locked up in an ATF storage locker.

Reviewing these and other prior cases, the district court correctly rejected Sarraj's arguments that the interstate nexus evaporated when government agents allegedly removed the guns from the stream of commerce by adding them to the Bureau's prop gun collection. Our cases have not endorsed, and we do not adopt here, any distinction that would allow passage of time, or acquisition by the government, to strip a firearm of its interstate nexus. We do not evaluate and weigh the scope of an effect on interstate commerce arising from a particular firearm possession. It is sufficient that the firearm once had a minimal connection to interstate commerce. This minimal nexus requirement reflects the intent of Congress in broadly criminalizing possession of firearms by convicted felons. See, *e.g.*, *Scarborough*, 431 U.S. at 572-75 (analyzing the legislative history of a predecessor statute and finding "no indication of any

concern with either the movement of the gun or the possessor or with the time of acquisition").[3]

On appeal, Sarraj emphasizes more his argument that federal agents should not be permitted, in the exercise of their discretion, to "federalize" local gun-possession offenses by offering suspects interstate prop guns rather than letting them buy local. We assume that federal agents will double-check their factual predicates when setting up a sting and are unlikely to waste time selling suspects guns that do not satisfy the requirements of the statute. Good federal agents will therefore opt to use interstate prop guns in every section 922(g)(1) investigation. As a practical matter, Sarraj is arguing that federal reverse sting operations are never constitutionally acceptable where federal agents supply the link to interstate commerce but could instead have called in state authorities to investigate and arrest under state law. Sarraj asserts that federal agents, by affirmatively ensuring that factual predicates for their authority are satisfied, intrude into an area of traditional state sover-

---

[3] We have relied on *Scarborough* on numerous occasions with the understanding that *Lopez* did not invalidate or call into question the analysis or rule of *Scarborough*, even if the minimal nexus requirement of *Scarborough* might seem to stand in some tension with the substantial-impact framework of *Lopez. E.g., Lewis*, 100 F.3d at 51-52; *Lemons*, 302 F.3d at 771-72; see also *Alderman v. United States*, 131 S. Ct. 700 (2011) (Thomas, J., dissenting from denial of certiorari) (asserting that *Lopez* conflicts with *Scarborough*).

eignty and exercise an impermissible "general police power."[4]

To the extent Sarraj is suggesting that federal law enforcement officials must defer to state authorities who may wish to prosecute locally under state law, we reject the suggestion. We also reject any suggestion that section 922(g)(1) prosecutions must be confined to contexts that are uniquely and necessarily federal. In enacting section 922(g)(1), Congress chose to exercise the full extent of its power over interstate commerce, treating gun possession by convicted felons as an issue of national interest in most circumstances — an interest that is concurrent with that of the several States. See *Scarborough*, 431 U.S. at 572 ("in implementing these findings by prohibiting both possessions in commerce and those affecting commerce, Congress must have meant more than to outlaw simply those possessions that occur in commerce or in interstate facilities"). Congress intended to regulate to the full extent of its commerce power, and permit federal authorities to reach every violation where a minimal nexus was established. *Id.* Section 922(g)(1) is facially constitutional, and a single past interstate trip sufficiently affects commerce

---

[4] Sarraj variously argued that section 922(g)(1) cannot be constitutionally interpreted to reach reverse sting operations and that the statute as applied permits unconstitutional "unfettered discretion." The bottom line is that he contends his prosecution is unconstitutional because it is beyond the scope of the Congressional power over interstate and foreign commerce.

(as our cases hold), so possessing a firearm of foreign manufacture as a felon can be both a federal and a state crime. It is up to the various state and federal agencies to work out together how to share the job of investigating and prosecuting these crimes.

In general, and particularly in areas of overlapping authority, we limit our review of decisions by prosecutors to evaluating allegations of illegal conduct or invidious bias in the exercise of executive branch discretion. *E.g.*, *United States v. Podolsky*, 798 F.2d 177, 181 (7th Cir. 1986) (observing that "judges lack the information necessary to evaluate prosecutorial decisions in areas of concurrent federal and state criminal jurisdiction"). Returning then to Sarraj's core argument, we conclude that the government here did not violate Sarraj's federal constitutional rights by investigating him and prosecuting him for violation of section 922(g)(1), including by providing him the opportunity for his firearm possession to violate federal law. Sarraj does not claim that he was entrapped by the agents who sold him the guns, or that the agents violated any of his constitutional rights in the process. His only objection is to the agents' selection of the guns they would sell him to ensure the elements of a federal crime would all be met.

In analogous reverse sting cases, this court has approved of conduct by federal agents that ensured a required interstate commerce nexus. In *Podolsky*, agents offered to pay a suspect to burn down a commercial building for insurance purposes. They steered the aspiring arsonist to a building that was in fact used for

interstate commerce rather than letting him burn down an unoccupied target building next door. *Id.* at 177-78. We held that although "federal agents could have turned the evidence over to the local authorities rather than induce Podolsky to commit a federal crime," the "responsibility for wise management of scarce prosecutorial and other governmental resources is not a judicial responsibility." *Id.* at 179. Similarly, in *United States v. Skoczen*, 405 F.3d 537 (7th Cir. 2005), agents borrowed a truckload of cigarettes from a tobacco company in Virginia and drove them to Illinois for use in a reverse sting. We found no problem with the agents' actions, although we noted that matters "might be different" if the defendant had expressed an interest in buying local that agents had frustrated. *Id.* at 542.[5]

We see no meaningful distinction between these cases and the reverse sting here. The agents here did not offend the Constitution with their choice to provide interstate prop guns. Accordingly, the judgment of the district court is AFFIRMED.

---

[5] Sarraj did not express any preference for guns made in Illinois, so we do not reach the question of whether he could opt out of federal criminal authority by doing so. Of course, even a gun manufactured in Illinois and sold to a suspect in Illinois could have acquired an interstate character via various histories of travel, trade, or use.