In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-1683

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER L. SPEARS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:10cr55-001—**Rudy Lozano**, *Judge.*

ARGUED OCTOBER 20, 2011—DECIDED SEPTEMBER 26, 2012

Before CUDAHY, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* A federal jury convicted Christopher Spears of various crimes stemming from his cottage industry of making and selling various counterfeit documents, including fake Indiana driver's licenses and handgun permits. He challenges three of his five convictions. First, he argues that the evidence was insufficient to convict him of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) because he did not "transfer[] . . .

a means of identification of another person," but merely transferred identifying information to its rightful owner, albeit in the form of a fraudulent handgun permit. He also claims the evidence was insufficient on the charges of producing a false identification document, *see id.* § 1028(a)(1), and unlawfully possessing five or more false identification documents, *see id.* § 1028(a)(3). As to these counts, he argues that the documents found in his possession are so obviously fake that they do not meet the statutory definition of "false identification document," *id.* § 1028(d)(4), and that his conduct did not affect interstate commerce, *see id.* § 1028(c)(3)(A).

We affirm the conviction for aggravated identity theft. Spears sold his customer a fraudulent handgun permit bearing her own identifying information, which she then used in an attempt to buy a firearm, violating 18 U.S.C. § 922(a)(6), a qualifying predicate felony for aggravated identity theft. Although this may not seem like an identity *theft*, colloquially understood, Spears's conduct falls within the literal terms of the statute. The text of § 1028A(a)(1) captures more than misappropriation of another person's identifying information; a person commits aggravated identity theft when he "knowingly transfers, . . . without lawful authority, a means of identification of another person" during or in relation to a predicate felony. *Id.* § 1028A(a)(1). Spears did exactly that when he knowingly and without lawful authority sold his customer a fraudulent handgun permit containing her own identifying information and she used it to try to buy a firearm.

We also affirm Spears's conviction for producing a false identification document. As relevant here, a "false identification document" is a document "commonly accepted for the purposes of identification" that "appears to be," but was not, issued by a state. *Id.* § 1028(d)(4). The fake driver's license underlying this count is sufficiently realistic that a reasonable jury could conclude that it appears to be issued by the State of Indiana. A reasonable jury could also conclude that Spears's production of the fraudulent driver's license affected interstate commerce.

But the evidence is insufficient to sustain Spears's conviction for unlawful possession of five or more false identification documents. The government introduced six possibilities, all of which either depict or resemble Indiana driver's licenses. Two of these documents, however, are simply *photocopies* of apparently fake driver's licenses; they do not appear to be issued by the State of Indiana, nor are they documents commonly accepted for identification purposes. Three others are so clearly incomplete or obviously unprofessional that they do not appear to be issued by the State. Accordingly, we reverse Spears's conviction on the § 1028(a)(3) count.

## I. Background

For several years Christopher Spears operated an illicit small business producing counterfeit documents—driver's licenses, handgun-carry permits, high-school diploma equivalency certificates, and so on—for

customers in and around Lake County, Indiana, just across the Illinois border from Chicago. Tirsah Payne was one of his customers. In the summer of 2009, she purchased a fraudulent Indiana handgun-carry permit from Spears. Payne was on pretrial release for a cocaine-possession charge and could not lawfully possess a gun. A man she knew only as "Tony" introduced her to Spears, and she gave him her identifying information so he could make the fake permit. After initially haggling over the price, they eventually settled on $100. Payne made the payment and within a few hours had her carry permit in hand. Spears gave "Tony" a freshly minted fraudulent handgun permit bearing Payne's name and birth date, and "Tony" delivered the permit to Payne.

Two months later, in September 2009, Payne used the fake permit to try to buy a handgun at a sporting-goods store. The sales clerk was suspicious and refused the sale. Before turning Payne away, however, he made a photocopy of Payne's fraudulent carry permit and sent the copy to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").

ATF agents and local police soon uncovered Spears's false-document cottage industry and got a warrant for his arrest and to search his home. When the arrest warrant was executed, Spears was found in possession of a zippered binder containing five documents that either depicted or resembled Indiana driver's licenses. Two of these documents (admitted at trial as Government Exhibits 8 and 12) were color photocopies on 8.5-by-11-inch paper of what look like Indiana driver's li-

censes. The other three documents (Government Exhibits 9 through 11) were laminated cards approximating the size and bearing the markings and information typically seen on an Indiana driver's license. During the subsequent search of Spears's home, officers located a makeshift basement office with a desk, computer, printer, some check paper, and a briefcase sitting next to the desk. The briefcase contained another laminated document resembling an Indiana driver's license (Government Exhibit 7). Forensic examination of the computer revealed templates for making fraudulent Indiana handgun-carry permits.

Based on this evidence, Spears was indicted for committing five federal crimes. Only Counts 2, 3, and 4 are at issue on this appeal.[1] Count 2 charged aggravated identity theft in violation of § 1028A(a)(1) stemming from Spears's sale of the fake handgun permit to Payne.[2]

---

[1] Count 1 charged Spears with aiding and abetting an attempt to acquire a firearm by fraud in violation of 18 U.S.C. §§ 2 and 922(a)(6) arising from Payne's attempt to purchase a firearm using the fake handgun permit. Count 5 charged Spears with possessing an implement designed to make a forged security in violation of 18 U.S.C. § 513(b). He does not challenge his convictions on these counts. In a separate case, Spears was charged with stealing governmental funds in violation of 18 U.S.C. § 641. *See United States v. Spears*, No. 2:10cr161-002 (N.D. Ind.). Spears pleaded guilty to that charge, and the district court sentenced him to a prison term of 10 months to be served concurrently with the sentence in this case.

[2] Section 1028A(a)(1) applies only to conduct "during and in relation to any felony violation enumerated in subsection (c)."

(continued...)

Count 3 charged Spears with producing false identification documents in violation of § 1028(a)(1), and Count 4 charged him with unlawfully possessing five or more false identification documents in violation of § 1028(a)(3).

The case was tried to a jury. At the close of the government's case in chief, Spears moved for a judgment of acquittal on all counts. Regarding Count 2, he argued that he could not be found guilty of aggravated identity theft because he did not "transfer[] . . . a means of identification of another person" within the meaning of § 1028A(a)(1). He claimed that selling Payne a fake handgun permit containing *her own* identifying information did not qualify. Regarding Counts 3 and 4, he argued that the six documents depicting or resembling Indiana driver's licenses were so incomplete or unprofessional that they did not appear to be issued by state authorities as required under the definition of "false identification document." 18 U.S.C. § 1028(d)(4). He also argued that the government failed to prove that his conduct affected interstate commerce. *See id.* § 1028(c)(3)(A). The district court took the motion under advisement. Spears renewed the motion at the close of the evidence, and at this point the judge denied it.

The jury convicted Spears on all counts. The judge imposed a sentence of 34 months—10 months each on

---

2 (...continued)

Here, the related felony was the § 922(a)(6) offense charged in Count 1 of the indictment. Spears does not argue that his conduct was not "during and in relation to" the § 922(a)(6) offense.

Counts 1, 3, 4, and 5, to be served concurrently, and a mandatory consecutive term of 24 months on Count 2, as required by the aggravated identity-theft statute. *See id.* § 1028A(a)(1), (b)(2). Spears appealed.

## II. Discussion

Spears challenges three of his convictions: Count 2, for aggravated identity theft in violation of § 1028A(a)(1); Count 3, for producing false identification documents in violation of § 1028(a)(1); and Count 4, for unlawfully possessing five or more false identification documents in violation of § 1028(a)(3). He argues that the district court should have granted his motion for judgment of acquittal. Our review is de novo, but Spears's burden is heavy; we view the evidence and draw all reasonable inferences in the light most favorable to the verdict, and will affirm as long as a rational jury could have found beyond a reasonable doubt that he committed the crimes. *United States v. Vallar*, 635 F.3d 271, 286 (7th Cir. 2011).

### A. Aggravated Identity Theft, § 1028A(a)(1)

The basic facts on the charge of aggravated identity theft were largely undisputed at trial. Spears was engaged in the business of producing and selling fraudulent documents. Payne, who could not lawfully possess a firearm, bought a fake Indiana handgun permit from him. She gave him her identifying information—her name and date of birth—and paid him $100 to make the

permit. Using Payne's identifying information, Spears created a counterfeit handgun permit, gave it to "Tony" to deliver to Payne, and "Tony" made the delivery. Payne later used the fake permit to try to purchase a firearm, a violation of 18 U.S.C. § 922(a)(6), which makes it a felony to make a false statement in connection with the acquisition of a firearm.

Aggravated identity theft is committed by one who "during and in relation to any felony violation enumerated in subsection (c), knowingly *transfers*, *possesses*, *or uses*, *without lawful authority*, *a means of identification of another person*." 18 U.S.C. § 1028A(a)(1) (emphasis added). A violation of the statute mandates a two-year prison term consecutive to the term imposed for the predicate felony. *See id.* § 1028A(a)(1), (b)(2). Spears was charged in Count 1 of the indictment with aiding and abetting a violation of § 922(a)(6) based on Payne's use of the fraudulent handgun permit to attempt to purchase a firearm. That is a predicate felony for purposes of aggravated identity theft, *see id.* § 1028A(c)(3), and Spears does not challenge his conviction on this count.

Count 2 charged Spears with the "transfer" variation of aggravated identity theft. The indictment alleged that he unlawfully *transferred* Payne's identifying information in violation of § 1028A(a)(1), not that he unlawfully *possessed* or *used* it. He argues that the government failed to prove that he transferred a "means of identification of another person" because the term "transfer" as used in § 1028A(a)(1) does not include giving someone

a fraudulent document containing *her own* identifying information. On this interpretation of the statute, an unlawful "transfer" does not occur unless the defendant conveys another person's identifying information to someone *other than* the owner of that information—that is, to a third party.

This argument makes sense as an intuitive matter. After all, the crime is titled "[a]ggravated identity *theft*," which suggests that the offense is committed only when, in connection with one of the enumerated predicate felonies, a person unlawfully takes and transfers someone's identifying information to *someone else*—in other words, *misappropriates* a person's identifying information and transfers it to another person. On a conventional understanding of identity theft, the illicit transaction at issue here—selling Payne a fraudulent handgun permit containing *her own* identifying information—doesn't qualify as a "theft" of her identifying information.

But the enacted title of a statute "cannot substitute for the operative text." *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008). The title is part of the statute and may function as a "'tool[] available for the resolution of a doubt about [its] meaning.'" *Id.* (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002)); *see also Flores-Figueroa v. United States,* 556 U.S. 646, 655 (2009) (extrapolating from the title of the "aggravated identity theft" statute). But here, Spears's conduct falls within the plain language of § 1028A(a)(1).

The meaning of a statute is determined "'by reference to the [statutory] language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 711 (7th Cir. 2005) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Where the relevant terms are not specifically defined, statutory language is given its ordinary meaning. *United States v. LaFaive*, 618 F.3d 613, 616 (7th Cir. 2010). The language of § 1028A(a)(1) is broad and general; nothing in the text limits the scope of the crime to misappropriating another person's identifying information and transferring it to someone else.

The term "transfer" is not defined in the statute. The verb "transfer" ordinarily means to hand over, give, or convey something from one person to another. *See* BLACK'S LAW DICTIONARY 1636 (9th ed. 2009) (defining the verb "transfer" as: "1. To convey or remove from one place or one person to another; to pass or hand over from one to another, esp. to change over the possession or control of. 2. To sell or give."). As the statute is grammatically structured, the object of the verb "transfer" is "a means of identification of another person." A "means of identification" is defined broadly to include "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7); *see also id.* § 1028(d) (definitions in § 1028(d) also apply to § 1028A). Thus, a person commits the "transfer" variation of aggravated identity theft if he unlawfully transfers—i.e., gives, con-

veys, or hands over—another person's identifying information. Neither misappropriation (i.e., *theft*) nor a third-party recipient are required.

And here, Spears's conduct entailed an unlawful transfer of another person's means of identification. Payne's identifying information—her name and date of birth—appeared on the face of the fake handgun permit. That information qualifies as a means of identification. Spears had no lawful authority to make and distribute Indiana handgun permits. He gave Payne's fake permit to "Tony," who in turn gave it to Payne. That amounts to a transfer within the meaning of the statute. Even without "Tony" as the intermediary, Spears "transfer[red], . . . without lawful authority, a means of identification of another," and therefore violated § 1028A(a)(1).

Spears emphasizes that the statute defines "means of identification" as personal identifying *information*—not a physical object like a driver's license, a handgun permit, or a Social Security card. Based on this distinction, he argues that although he gave Payne a *physical object* containing personal identifying information (the fraudulent handgun permit), he did not transfer the *information* contained on the permit because it already belonged to her.

This interpretation cannot be squared with the broad language of the statute, which, as we have noted, is not limited to *third-party* transfers. As the statute is written, the "transfer" language covers more than the unlawful transfer of identifying information to a person not its owner. The crime of aggravated identity theft is com-

mitted when a person "transfers, . . . without lawful authority," the personal identifying information "of another"; that is, when a person unlawfully transfers personal identifying information that is not his own.

We do not doubt that § 1028A is primarily aimed at punishing the *misappropriation* of personal identifying information—the act of stealing another person's identifying information and transferring, possessing, or using it in connection with the commission of one of the enumerated predicate felonies. *See Flores-Figueroa*, 556 U.S. at 655-57 (describing "classic" identity theft under § 1028A); *United States v. Ozuna-Cabrera,* 663 F.3d 496, 500 (1st Cir. 2011) ("Without question, Congress harbored concerns over criminals who actually steal other people's identities."). But the statutory language casts a much wider net. Indeed, in addressing the meaning of the statutory phrase "without lawful authority," other circuits have held that § 1028A(a)(1) is not limited to *theft* of personal identifying information. *See Ozuna-Cabrera*, 663 F.3d at 500 ("There is nothing to suggest . . . that Congress intended to so narrowly restrict the statute's reach to identity crimes involving . . . traditional notions of theft."); *United States v. Rentana*, 641 F.3d 272, 274-75 (8th Cir. 2011); *United States v. Mobley*, 618 F.3d 539, 547-48 (6th Cir. 2010); *United States v. Abdelshafi*, 592 F.3d 602, 609 (4th Cir. 2010); *United States v. Hurtado*, 508 F.3d 603, 607-08 (11th Cir. 2007) (per curiam), *abrogated in part on other grounds by Flores-Figueroa*, 556 U.S. 646.

Although Spears does not focus on the "without lawful authority" language of the statute, we find this line of

cases instructive. Our sister circuits are unanimous that
§ 1028A covers more than identity *theft*, conventionally
understood. This unanimity, though on a different
element of the crime, confirms our conclusion here.
We conclude that the evidence is sufficient to sustain
Spears's conviction for aggravated identity theft under
§ 1028A(a)(1). He sold Payne a fraudulent handgun
permit containing her identifying information, and
she later used that permit to try to purchase a handgun
in violation of § 922(a)(6). In doing so he "transfer[red], . . .
without lawful authority, a means of identification
of another person" in connection with a predicate felony.
18 U.S.C. § 1028A(a)(1).

## B.  Production and Possession of False Identification Documents, § 1028(a)(1) & (a)(3)

Spears also challenges his conviction on Count 3 for
producing a false identification document in violation of
§ 1028(a)(1) and Count 4 for possessing five or more
false identification documents in violation of § 1028(a)(3).
In particular, he argues that the documents the gov-
ernment offered in evidence are not "false identifica-
tion documents" under the statutory definition be-
cause they do not appear to be government-issued. 18
U.S.C. § 1028(d)(4). He also argues that even if the docu-
ments he produced and possessed qualify as false iden-
tification documents, the government failed to prove
that his conduct affected interstate commerce as
required under § 1028(c)(3)(A).

The possession offense, Count 4, carries a quantity
threshold, so we'll address that conviction first. Section

1028(a)(3) makes it a crime to "knowingly possess[] with intent to use unlawfully or transfer unlawfully five or more . . . false identification documents." As relevant here, a "false identification document" is defined as "a document of a type intended or commonly accepted for the purposes of identification of individuals" that "is not issued by or under the authority of a governmental entity" but "appears to be issued by or under the authority of . . . a State." *Id.* Spears argues that the documents found in his possession are so incomplete or unprofessional that they do not meet this definition.

By its express terms, the definition of "false identification document" requires that the document in question must appear to be state-issued and be of a type commonly accepted for identification. The Fourth Circuit has distilled this definition as follows: A "false identification document" within the meaning of § 1028(d)(4) is "an identification document that, although not issued by or under the authority of the [government], nonetheless appear[s] to a reasonable person of ordinary intelligence to be issued by or under the authority of the [government]." *United States v. Jaensch*, 665 F.3d 83, 91 (4th Cir. 2011). The document need not be an exact replica of a government-issued identity card, *see id.* at 94-95; *United States v. Fuller*, 531 F.3d 1020, 1025-26 (9th Cir. 2008), but it must at least *appear* to be government-issued and of a type commonly accepted for identification. Only one of the government's exhibits meets this standard.

The government introduced six documents at trial—Exhibits 7 through 12—either depicting or resem-

bling Indiana driver's licenses. Five of these were in Spears's possession when he was arrested, and the sixth was recovered in the search of his home. Exhibits 8 and 12 are color photocopies on 8.5-by-11-inch paper of what appear to be Indiana driver's licenses. These two exhibits are not false identification documents under the statutory definition. No reasonable person would say that a *photocopy* of a driver's license "appears to be" issued by or under the authority of a State, and photocopies of driver's licenses are not commonly accepted for identification.

Eliminating these two exhibits from the total is enough to invalidate Spears's § 1028(a)(3) conviction, but several of the government's other exhibits are also insufficient. Exhibits 7, 9, and 11 resemble driver's licenses in that they are cut out to the proper size and laminated, but their production value is what one might expect if an elementary-school student created an identification card as a toy. They have the thickness of laminated pieces of paper, not state-issued driver's licenses, and their picture quality is laughably bad. No reasonable person making even a cursory examination of these "driver's licenses" would think they are state-issued.

The government offers a couple of arguments to avoid this conclusion, but neither is persuasive. Citing *United States v. Castellanos*, 165 F.3d 1129, 1132 (7th Cir. 1999), the government argues that documents do not need to be complete in order to qualify as "false identification documents." But *Castellanos* involved a wholly different

statutory term: "identification document," which is defined in § 1028(d)(3).[3] The relevant statutory term in this case is "*false* identification document," which is defined in § 1028(d)(4). The definition of "false identification document" in § 1028(d)(4) includes the requirement that the document must "appear[] to be issued by or under the authority of" a state; the definition of "identification document" in § 1028(d)(3) does not.

The government also argues that even if Exhibits 8 and 12 (the color photocopies) are not themselves false identification documents, a rational jury could infer that Spears possessed the false driver's licenses depicted in the photographs at some previous time. Even granting the inference, this argument fails. First, Exhibits 7, 9, and 11 are also defective for the reasons we have noted; Exhibits 8 and 12 alone are not enough to sustain Spears's conviction for possessing five or more false identification documents. Second, where a statute imposes a quantity threshold for a possession offense, the government must prove that the defendant possessed the minimum quantity at a particular time. *See United States v. Russell*, 908 F.2d 405, 407 (8th Cir. 1990) ("[S]eparate and distinct instances of possession cannot be combined in order to meet the minimum numerical threshold" in

---

[3]  At the time, the definition of "identification document" was found in 18 U.S.C. § 1028(d)(1). *See United States v. Castellanos*, 165 F.3d 1129, 1131 (7th Cir. 1999).

18 U.S.C. § 1029(a)(3).).[4] Thus, even accepting the government's argument that Spears's possession of the two photocopies supports a reasonable inference that he possessed the items depicted in the photocopies at some previous time, Exhibits 8 and 12 cannot be counted toward the statutory minimum of five. Accordingly, Spears was entitled to a judgment of acquittal on the § 1028(a)(3) charge.

We reach a different conclusion, however, on Count 3, the conviction for unlawfully producing a false identification document in violation of § 1028(a)(1). That subsection of the statute makes it a crime to "knowingly and without lawful authority produce[] . . . a false identification document." Unlike the possession offense in § 1028(a)(3), the production offense in § 1028(a)(1) does not have a quantity threshold. Spears again argues that none of the government's exhibits appears to be state-issued. *See* 18 U.S.C. § 1028(d)(4).

We have explained why five of the six documents the government introduced at trial do not meet the definition of "false identification document." The one remaining document, Exhibit 10, makes the grade. Unlike the other exhibits, Exhibit 10 bears the size, thickness, and overall appearance of a normal driver's license. The

---

[4] Of course, Congress may specify that quantities may be aggregated over time. *See, e.g.*, 18 U.S.C. § 1029(a)(2) (proscribing certain types of fraudulent activities that generate "anything of value aggregating $1,000 or more during [any one-year] period").

edges of the laminate appear to be splitting, but this is explainable as wear and tear; a rational jury could conclude that Exhibit 10 is passable as a state-issued driver's license.

Spears points out that the signature appearing above the photo on Exhibit 10 does not match the name printed on the card. To a careful observer, this discrepancy would cast serious doubt on the document's authenticity. The relevant standard, however, is not that of a careful observer, searching for mistakes. With the exception of airport screeners, those who check identification documents often do so quickly and often without scrutinizing the details. As other circuits have held, a false identification document may contain mistakes and yet still appear to be government-issued. *See Jaensch*, 665 F.3d at 94-95; *Fuller*, 531 F.3d at 1025-26. A rational jury could conclude that Exhibit 10 appears to be a state-issued driver's license, notwithstanding the discrepancy between the signature and the printed name.

Finally, we reject Spears's argument that the government failed to prove that his conduct affected interstate commerce on this count. To convict a defendant under § 1028(a), the government must prove that his conduct satisfies one of the conditions in § 1028(c). The relevant condition here is that Spears's "production, transfer, possession, or use prohibited by this section *is in* or *affects* interstate or foreign commerce." 18 U.S.C. § 1028(c)(3)(A) (emphasis added). The government does not argue that Spears's conduct was "in" inter-

state commerce. Instead, it asserts that Spears's conduct "affected" interstate commerce.[5]

As we have recently explained in another context, "[t]he interstate nexus requirement is a factual predicate, not a mens rea element of the crime that would require proof of defendant's knowledge of facts supporting the nexus." *United States v. Sarraj*, 665 F.3d 916, 921 (7th Cir. 2012). The purpose of the interstate-commerce requirement is to ensure the constitutionality of certain federal crimes that might otherwise exceed Congress's enumerated powers under Article I. *See id.* The Supreme Court has repeatedly stated that the phrase "affecting commerce" is a term of art "indicat[ing] Congress'[s] intent to regulate to the outer limits of its authority under the Commerce Clause." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001).

Thus, we have held that the government "need only demonstrate a *de minimis* effect on commerce" or "'a realistic probability of an effect . . . on interstate commerce.'" *United States v. Mitov*, 460 F.3d 901, 908 (7th Cir. 2006) (quoting *United States v. Peterson*, 236 F.3d 848,

---

[5] These sorts of interstate-commerce nexus requirements are "often described loosely as the 'jurisdictional' element" of a federal offense, but they typically do not affect the court's subject-matter jurisdiction and therefore are "better understood as simply one element of the crime." *United States v. Sarraj*, 665 F.3d 916, 921 n.2 (7th Cir. 2012).

852 (7th Cir. 2001)).[6] A defendant cannot benefit from being caught before his criminal acts had a chance to affect interstate commerce; "[t]he defendant need have had only the intent to accomplish acts, which, if successful, would have affected interstate . . . commerce." *United States v. Klopf*, 423 F.3d 1228, 1239 (11th Cir. 2005). Accordingly, the question here is whether, viewing the evidence in the light most favorable to the verdict, a rational jury could have concluded beyond a reasonable doubt that Spears's production of a fake driver's license had a realistic probability of affecting interstate commerce.

The government's evidence on this issue was limited to the testimony of a state police officer who told the jurors what they certainly already knew: that a driver's license authorizes the holder to drive on interstate highways; that all 50 states recognize a driver's license as a valid form of identification; and that as a state police officer, he had encountered many drivers from other states using the interstate highway system in Indiana. In evaluating this testimony, the jurors were "free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary

---

[6] We have held that the familiar test whether the regulated activity "substantially affects" interstate commerce, *see United States v. Lopez*, 514 U.S. 549, 559 (1995), applies only to legislation; it does not require the government to prove a "substantial effect" on interstate commerce in each criminal case, *see United States v. Humphreys*, 468 F.3d 1051, 1054-55 (7th Cir. 2006) (citing cases).

affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *United States v. Flores-Chapa*, 48 F.3d 156, 161 (5th Cir. 1995).

We have little difficulty concluding that a rational jury could have found that Spears's production of a fake driver's license had a realistic probability of affecting interstate commerce. A fraudulent driver's license obviously does not confer legal authority to drive, so its production—and by implication, its use—surely influences the safety of people traveling on interstate highways. A driver's license is also a form of identification for traveling in interstate commerce by air, train, bus, or boat. The federal government has a clear interest in maintaining the safety and integrity of these channels of interstate commerce, and the production and distribution of a fake driver's license undermines that interest. A driver's license may be used as identification to purchase regulated goods such as alcohol, tobacco, and firearms that move in interstate commerce, and in connection with interstate banking, cash-delivery, and credit-card transactions.

Spears insists that the effect on interstate commerce in this case is attenuated and speculative, citing *United States v. Groves*, 470 F.3d 311 (7th Cir. 2006). *Groves* involved a conviction for possession of a firearm by a felon under 18 U.S.C. § 922(g). The firearm in question was never recovered, so the government could not prove that it was manufactured outside the state and therefore had previously traveled in interstate commerce. Thus, to prove the interstate-commerce element of the

§ 922(g) offense, the government was forced to rely on a speculative chain of inferences, which we described as follows:

> [T]he government contends that Groves' possession of the firearm led to the violent act of firing the gun toward a halfway house where convicts and drug addicts lived. In turn, this violence could displace workers, encourage people to move from the unsafe area, and increase the government's cost of housing persons who would otherwise be able to live in Dismas House.

*Groves*, 470 F.3d at 327. We held that this reasoning was based on "the same sorts of tenuous connections to commerce" that the Supreme Court had expressly rejected in *United States v. Lopez*, 514 U.S. 549 (1995). *Id.* Accordingly, we concluded that the government had not carried its burden on the interstate-commerce element of the offense. *Id.*

When it comes to evaluating the effect on interstate commerce, however, producing a fraudulent driver's license is not analogous to possessing a firearm, the offense at issue in *Groves*. As a matter of common knowledge, a fraudulent driver's license illicitly facilitates a variety of activities affecting interstate commerce, from driving on interstate highways to engaging in interstate commercial transactions that require this form of identification. The probable effect of Spears's conduct on interstate commerce was thus immediate and obvious, and does not rely on a tenuous chain of inferences as

in *Groves*. We are satisfied that a rational jury could conclude that Spears's production of a false identification document had the required effect on interstate commerce.

### III. Conclusion

In sum, we conclude that the evidence is sufficient to sustain Spears's convictions on Counts 2 and 3 for aggravated identity theft and producing a false identification document, but insufficient to sustain his conviction on Count 4 for unlawfully possessing five or more false identification documents. As required by § 1028A(b)(2), the mandatory two-year sentence on Count 2 was imposed consecutively, but the sentences on the other counts were ordered to run concurrently. Although the sentence on the conviction we are reversing is concurrent to the sentences on the convictions that remain, "we cannot know whether the judge would have sentenced [Spears] differently in the absence of the [invalid § 1028(a)(3)] conviction." *United States v. Rappe,* 614 F.3d 332, 334 (7th Cir. 2010). Spears is therefore "entitled to a shot at persuading the judge to give him a lighter sentence in view of the acquittal we are directing." *United States v. Shah*, 559 F.3d 643, 644 (7th Cir. 2009); *see also United States v. Dooley*, 578 F.3d 582, 592 (7th Cir. 2009).

Accordingly, we AFFIRM Spears's convictions for aggravated identity theft in violation of § 1028A(a)(1) and for producing a false identification document in violation of § 1028(a)(1). We REVERSE his conviction for unlawfully

possessing five or more false identification documents in violation of § 1028(a)(3), VACATE his sentence, and REMAND for resentencing.